# Pittsburgh, Virginia and Charleston Railway Co. *versus* Vance.

1. In proceedings to assess damages for right of way through land for railroad purposes, the market value is not necessarily the price which it would command in a forced sale at public auction; it should be estimated upon a fair consideration of the location of the land, the extent and condition of its improvments, its quality and productiveness, and the uses to which it may reasonably be applied, taken with the general selling price of lands in the neighborhood at the time.

2. The general selling price of lands in the neighborhood cannot be shown by evidence of particular sales of alleged similar properties; it is a price fixed in the mind of the witness from what lands are generally held at for sale, and at which they are sometimes actually sold, *bona fide*, in the neighborhood.

3. In order that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation; he should, in a general way and to a reasonable extent, have in his mind the data from which a proper estimate of value ought to be made; if interrogated, he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in condition to know what he proposes to state, and to enable the jury to judge of the probable proximate accuracy of his conclusions.

4. In proceedings to assess damages for right of way through land for railroad purposes, a witness was called to testify as to the difference in the market value of the land, through which the railroad passed, before

| 115 | 325 |
| 128 | 250 |

| 115 | 325 |
| 135 | 30 |
| 135 | 35 |

| 115 | 325 |
| 144 | 519 |

| 115 | 325 |
| 151 | 167 |

| 115 | 325 |
| 159 | 104 |

| 115 | 325 |
| 170 | 368 |

| 115 | 325 |
| 174 | 297 |

| 115 | 325 |
| 177 | 251 |

| 115 | 325 |
| 19 SC | 310 |

| 115 | 325 |
| 204 | 408 |

| 115 | 325 |
| 205 | 650 |

| 115 | 325 |
| 210 | 213 |
| 210 | 214 |

| 115 | 325 |
| 212 | 160 |

| 115 | 325 |
| 215 | 505 |

| 115 | 325 |
| 216 | 227 |
| 216 | 537 |

| 115 | 325 |
| f224 | 123 |
| 224 | 125 |

and after the construction of the railroad. He testified that he was not much acquainted with the land, that he had been on the lower part of it, but knew nothing at all about the upper part, that he had seen the lower part seven or eight years before, but had not seen it for four or five years before the railroad was built; that he knew nothing whatever of the quality of the upper part, which was the greater part of the tract; and that his estimate was made with reference solely to the lower part, which he knew. *Held,* that he had not sufficient knowledge of the requisite facts upon which to base an opinion on the subject to be testified to, and was, therefore, incompetent.

5. It is competent, to test the knowledge and judgment or the bias of a witness, testifying in proceedings to assess damage for right of way through land for railroad purposes, by asking him, upon cross-examination, whether it is not an advantage to farming lands in that neighborhood to have a railroad constructed near them, and whether they are not worth more in consequence.

6. In the computation of damages for right of way through a mill property for railroad purposes, the loss of custom to the mill may be proven for the sole purpose of showing how and to what extent the market value of the land has been depreciated by the construction of the road, in the comparison of the advantages and the disadvantages. The loss of custom, like the cost of fencing, is to be considered by the jury, as it may affect the market value of the mill and the land, but not as a distinct or legitimate item of damages.

February 1st, 1887. Before MERCUR, Ch. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Fayette county:* Of January Term, 1887, No. 123.

On May 8th, 1882, Thomas Vance presented his petition to the Court of Common Pleas of Fayette county for the appointment of viewers to assess damages sustained by him by reason of the location and construction of the Pittsburgh, Virginia and Charleston Railway Company over his land. The court thereupon, on the nomination of the parties, appointed viewers under the Act of February 19th, 1849. The railway company took a strip of the land of Thomas Vance, sixty feet wide and twenty-three hundred feet long. This was a part of a tract of land of ninety acres, used as a farm, and upon which, in addition to the farm buildings, were a grist mill and a saw mill operated by him.

The viewers entered upon the discharge of their duties and, on June 21st, 1882, filed their report, awarding Thomas Vance $1,100 damages. From this he appealed; the issue was made up and tried before a court, INGHRAM, P. J., and a jury. Verdict for the plaintiff, Thomas Vance, for $4,532.50, and judgment thereon. The defendant, The Pittsburgh, Virginia and Charleston Railway Company, thereupon took this writ and filed *inter alia* the following assignments of error:

[Pittsburgh, Virginia & Charleston Railway Co. v. Vance.]

1. The court erred in not sustaining the objection of the defendant to the qualification of witness John Brownfield to give an estimate of plaintiff's damages, the offer and objection and ruling being as follows, viz.:

Witness John Brownfield, having testified that he is "not much acquainted" with plaintiff's farm, "only the lower part, I was never over it, only on it about the house and railroad and mill," was asked by plaintiff:

*Q.* Well, sir, state what you consider, if any, the difference in the market value of that tract of land of about eighty-eight acres, as affected by the location and construction of the railroad upon it?

The defendant objects that the witness has disclosed facts which show that he is not competent to give an estimate.

By the court: He has answered that he was acquainted with the land before and since the construction of the railroad, and, if the witness is able to answer the question, it is a proper question. Objection overruled, and exception sealed for the defendant.

2. The court erred in not sustaining the defendant's objection to the following question, put by plaintiff to his witness, Samuel Ball, who had just testified that he did "not know the market value of the property, either before or after the construction of the railroad, only what he would have been willing to give if he had wanted to buy it"—the offer and objection and ruling being as follows, viz.:

*Q.* I will ask you, Mr. Ball, "if your opinion is based on what you consider its market value before and after?"

Defendant objects that the question is incompetent and leading.

The Court: The same question has been raised and passed upon. The objection will be overruled, and an exception sealed for the defendant.

*A.* It is, yes, sir.

3. The court erred in overruling defendants' motion to strike out and withdraw certain testimony from the consideration of the jury, which motion and ruling are as follows, viz.: And now, to wit, February 24th, 1886, the testimony in above stated case being closed, the defendant company, by counsel, moves the court to strike out and withdraw from the consideration of the jury the estimate made by plaintiffs' witness, John Brownfield, of the amount of damage plaintiff sustained in his property, as the result of the location and construction of the defendants' railway over said property, for the reason that said witness testified on cross-examination that he did not know the market value of said property, either before or after the location and construction of said railway thereon, or

[Pittsburgh, Virginia & Charleston Railway Co. *v.* Vance.]

at the time of said location and construction. And defendant makes the same motion as to the estimate of said damages made by each of the following other witnesses on part of said plaintiff, viz.: William Feuster, Daniel Swearingen, John Bitner, Samuel Ball, John Dennis, Robert Byers, Andrew Bryson, Enoch David and Joseph Barton, for the same reason as that assigned as above in the case of John Brownfield, and for the additional reason the cases of Andrew Bryson and Enoch David that they also testified on cross-examination that their estimates were based solely on the value of said property for the uses and purposes for which the plaintiff used and held it; and for the additional reason, in the cases of said Hormell, Bitner, Ball, Dennis and David, that they testified on cross-examination that they based their said estimate upon what they would be willing to give for said property ; and for the additional reason, in the case of said Barton, that he testified on cross-examination that he based his estimate upon his opinion of the present (at the time of trial) value of said property. And now, February 24th, 1886, the foregoing motion is overruled, and an exception sealed for the defendant company.

4. The court erred in sustaining the objection of plaintiff to the question defendant offered to ask witness, Henry Boyer, on cross-examination, which offer, objection and ruling are as follows, viz.: The defendant offers to ask the witness if, in an advertisement for the sale of this land at public outcry, he wouldn't consider it an advantage and an attraction to bidders to state that the defendant company had located and constructed and was operating its line of railroad through the farm.

Plaintiff objects to the evidence offered as being incompetent and irrelevant.

THE COURT: The same question was asked before in a different form. The objection is sustained, and an exception sealed for the defendant.

5. The court erred in sustaining the objection to the question propounded to witness, Andrew Bryson, on cross-examination; the witness having already testified that he did not think a railroad of any advantage to a farm through which it ran, unless it had coal under it, which question, objection and ruling are as follows, viz.:

*Q.* Are not farming lands of the same quality worth more in the neighborhood of railroads than away from them ?

Plaintiff objects.

THE COURT: I believe the case referred to determines, as it had been determined before, that the advantage must be special and the disadvantages actual. The objection will be sustained, and an exception sealed for the defendant.

[Pittsburgh, Virginia & Charleston Railway Co. v. Vance.]

6. The court erred in overruling defendant's objection to plaintiff's offer to prove loss of custom, by witness Jacob Vance, which offer, objection and ruling are as follows, viz.:

Plaintiff offers to ask the witness how the trade or custom of the mill was affected by the construction of the railroad.

Defendant objects that the evidence offered is incompetent and irrelevant.

THE COURT: In the absence of some authority to the contrary, we think the testimony is competent. The objection will be overruled, and an exception sealed for the defendant.

7. The court erred in overruling defendant's objection to plaintiff's further offer of proof by the same witness, which offer (referring to fear of the neighbors to go to mill so close to railroad) and objection and ruling are as follows, viz.:

Q. Well, can you state how much of your custom you lost by reason of that?

Defendant objects that the evidence offered is incompetent.

THE COURT: If the witness can state, it is competent; it would be a very difficult matter for him to state how much he had lost by reason of that, I would suppose, but if he can state, it is competent enough, and the objection will be overruled and an exception sealed.

Witness: Well, I could not tell just what amount of custom has been drove away by the railroad being so close, but there has been more than half of it, I suppose, anyhow.

8. The court erred in overruling defendant's objection to the offer of the plaintiff, when witness, Daniel Swearingen, was on the stand, which offer, objection and ruling was as follows, viz.:

The plaintiff offers to show by this witness that, at the time he was there, before the railroad was constructed, there was a considerable country custom coming to the mill that has been in part obstructed by reason of the construction of this railroad; that the farmers who used to come, in part have abandoned coming to that mill on account of the danger in crossing the railroad, and to their teams while standing in front of the mill and getting their grist—delivering their grist.

Defendant objects that the evidence is incompetent and irrelevant.

THE COURT: Objection overruled, and bill sealed for the defendant.

Q. I will ask you what kind of a custom they had at that mill some six or seven years since and before the construction of the railroad there?

A. Well, there was pretty good custom I thought; we done a good deal of work.

*Q.* Well, sir, how is it now, since the construction of the road, if you know?

*A.* Well, it is rather limited now at certain times.

9. The court erred in the answer to the third point submitted on the part of the plaintiff, which point and answer are as follows, viz.:

3. If the jury find from the evidence that the construction of the railroad tended to decrease the business of the flouring mill and the saw mill, or either of them, by making it unsafe to drive horses near them, and dangerous and inconvenient for persons going to and from them, then these would be legitimate items of damage.

*A.* That point is correct and is affirmed, as we have already so instructed you.

*Nathaniel Ewing*, for plaintiff in error.—A perusal of the testimony of each of the witnesses named in the assignments of error will disclose how completely lacking they are in all essential requirements to give estimates of the damages for the guidance of the jury. Such an estimate is, as Justice STRONG said, in Watson *v.* P. & C. R. R. Co., 1 Wright, 481, "but a mere guess, with no substantial foundation upon which to rest." It does not rise to the standard of an opinion, and is as far below the requirement as was the testimony commented upon by Chief Justice LOWRIE, in Carr *et al. v.* The Northern Liberties, 11 Casey, 327.

Expert testimony is not required, it is true, but it is necessary that the witness should have sufficient knowledge of the requisite facts upon which to base an opinion, and that he should make up his opinion on those facts in the manner the law directs, or else his testimony should not be permitted to go before and influence the jury.

Except in the case of the witness Brownfield, the fact did not appear, until cross-examination, that the estimates of these witnesses were so founded in ignorance and formed in error, and the only proper course was then pursued by a motion to strike out and withdraw these estimates from the consideration of the jury. Any instruction by the court in the charge, after comments and arguments by counsel, does not cure the error; D. & H. C. Co. *v.* Barnes *et al.*, 7 Casey, 193; P. R. R. Co. *v.* Butler, 7 P. F. S., 338; H. & B. R. R. Co. *v.* Decker, 1 Nor., 124.

The party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credit: Cameron *v.* Montgomery, 13 S. & R., 132; Ott *v.* Houghton, 6 Casey, 451. Whatever may expose the bias or

intelligence of witnesses may be elicited on cross-examination; Yeager v. Weaver, 1 Leg. Gaz., 156.

The sixth, seventh, eighth and ninth assignments of error have reference to the claim of the plaintiff for damages for custom lost at his mill, and to the charge of the court relative thereto in reply to the plaintiff's third point. Since the case of the R. R. Co. v. Hill, 6 P. F. S., 460, it appears to be settled that loss of custom may be proven for the purpose of showing how and to what extent the real estate has been depreciated in market value by the railroad.

Loss of custom can no more be allowed as an item of damage than can the cost of fencing. In both cases it is but the consequent depreciation in the value of the realty that can be estimated. Thus, in Montour R. R. Co. v. Scott, 11 W. N. C., 51, this court explicitly says the " cost of fencing cannot be allowed as a distinct item of damage." The court below charged in the present case that loss of custom is a "legitimate item of damage." The cost of fencing can only be considered as it affects the market value of the land. The jury cannot include in the verdict a fund to cover that cost: R'y. Co. v. McClosky, 16 W. N. C., 561; Setzeer v. R. R. Co., 2 Amerman, 56. The jury can't take into consideration any supposed loss to plaintiff of profits in his business. This is too speculative, and would lead to most ruinous results: R. R. Co. v. Patterson, 11 Out., 461.

*R. H. Lindsey* (*A. D. Boyd* with him), for defendant in error.

Mr. Justice CLARK delivered the opinion of the court February 21st, 1887.

The market value of land is not necessarily, as would sometimes seem to be supposed, the price which it would command in a forced sale by public auction; it is estimated upon a fair consideration of the location of the land, the extent and condition of its improvements, its quantity and productive qualities, and the uses to which it may reasonably be applied, taken with the general selling price of lands in the neighborhood at the time. The price which, upon full consideration of the matters stated, the judgment of well informed and reasonable men will approve may be regarded as the market value: Railroad Co. v. Patterson, 11 Outerbridge, 464. The general selling price of lands in the neighborhood cannot be shown by evidence of particular sales of alleged similar properties; it is a price fixed in the mind of the witness from a knowledge of what lands are generally held at for sale, and at which they are sometimes actually sold, *bona fide*, in the neighborhood.

[Pittsburgh, Virginia & Charleston Railway Co. *v.* Vance.]

The estimate which a witness may make, it is true, is in some sense an opinion, but it is an opinion formed from actual personal knowledge of facts affecting the subject matter of inquiry, and, as a conclusion of fact, is admissible in evidence, from necessity, as the best evidence of which such a question is ordinarily susceptible. In order, therefore, that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation, he should, in a general way, and to a reasonable extent, have in his mind the data from which a proper estimate of value ought to be made; if interrogated, he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in condition to know what he proposes to state, and to enable the jury to judge of the probable proximate accuracy of his conclusions. He may hesitate in making an estimate of the value, he may say that he does not know certainly, but, after due deliberation, may be able to express an opinion, or come to a conclusion, the accuracy of which, under all the evidence, is of course wholly for the jury.

In the case now under consideration, John Brownfield was called as a witness on part of the plaintiff; he stated, in the most unequivocal manner, that he was not much acquainted with the land in question; that he had been on the lower part of it, but that he knew nothing at all about the upper part; that he had seen the lower part a couple of times, seven or eight years ago, but had not seen it for four or five years before the railroad was built; that he knew nothing whatever of the quality of the upper part, which was the greater part of the tract, and that his estimate was made with reference solely to the lower part, which he knew. It certainly does not require much argument to show that Brownfield was an incompetent witness to testify on this question; he had not sufficient knowledge of the requisite facts upon which to base an opinion. In the assessment of damages, regard was to be had to the tract of land, taken as a whole, and yet the greater part of it, he freely confessed, he knew nothing about. He did not pretend to know the general selling price of land in the neighborhood, and admits that he did not know enough about the premises injured to make any estimate whatever.

The first assignment of error is, therefore, sustained.

It is unnecessary to refer, in detail, to the testimony of the witnesses mentioned in the second and third assignments; what has been said with reference to the testimony of Brownfield, indicates the course of examination which should be pursued, and, as the cause must go back for a second trial, the same rule of examination will be applicable to all the witnesses named.

[Pittsburgh, Virginia & Charleston Railway Co. v. Vance.]

Nor can we see any good reason for excluding the evidence proposed, on cross-examination, referred to in the fourth and fifth assignments. It was certainly competent, although the advantages to be considered must be special and the disadvantages actual, for the defendant, on cross-examination, to test the knowledge and judgment, or the bias of the plaintiff's witnesses, in the form proposed. The force of the evidence was perhaps slight, but it was a legitimate form of examination for the purpose stated.

The court was clearly correct, however, in admitting evidence to show how the trade or custom of the mill was affected by the construction of the railroad; that, by reason of the proximity of the railroad to the mill, it was inconvenient and dangerous for persons with teams and wagons, going to and from it, and that the effect of this was to decrease or destroy the business and custom of the mill, and consequently to lessen its value. If the peril and inconvenience to customers from this cause was such that they were thereby induced to carry their grain to be ground to other mills, and the plaintiff's land was thereby depreciated, the taking of the plaintiff's property, and the construction of the railroad thereon, were the direct and immediate cause of this injury. The testimony, therefore, in regard to the loss of custom and the (as we said in W. P. R. R. Co. v. Hill, 56 Penn., 469) reason for it " were properly received, and submitted to the jury as grounds of compensation to be made to the plaintiff for the deterioration of the property."

But the testimony was relevant only as it might tend to show that the loss of custom detracted from the value of the land, and to what extent; for, if the plaintiff might recover for the loss of custom as a specific item of claim, he might, under a certain condition of the proofs, recover beyond the value of the land, and this would be at variance with all the cases. In the third point submitted by the plaintiff, the court was requested to instruct the jury as follows: " If the jury find from the evidence that the construction of the railroad tended to decrease the business of the flouring mill and saw mill, or either of them, by making it unsafe to drive horses near them, and dangerous and inconvenient for persons going to and from them, then these would be legitimate items of damage." To which the court answered: " This point is correct, and is affirmed, as we have already so instructed you." The absolute affirmance of this point is certainly clear error. Throughout the whole course of the trial, and even in the charge, the learned court would seem to have assumed the law to be as we have stated it; yet, notwithstanding the reference in the answer of this point to the general charge, we think it

[Patterson *v.* Dushane.]

is good ground for reversal. The law is, we think, very correctly laid down in the very recent case of the Pittsburgh, Bradford & Buffalo Railway Co. *v.* McCloskey, 16 W. N. C., 561, where the general principle is thus stated: "The inconvenience, arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to the fences, fields, or farm buildings, not resulting from negligence, and, generally, all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper matters for consideration; but they are to be considered in comparison with the advantages, only as they affect the value of the land." It is true, this paragraph, from the opinion in the case just cited, was read to the jury as part of the charge, but the general statement of the rule therein contained might well be supposed to yield to the more specific one, embodied in the point; the answer to which had a manifest tendency to mislead the jury.

We agree with the plaintiff in error that, since the case of Railroad Co. *v.* Hill, *supra*, it is well settled that, in the computation of damages for right of way, the loss of custom to a mill may be proven for the sole purpose of showing how, and to what extent, the market value of the land has been depreciated by the construction of the road. In the comparison of the advantages and the disadvantages, the loss of custom, like the cost of fencing, is to be considered by the jury, as it may affect the market value of the mill and the land, but not as a distinct or "legitimate item of damages."

The judgment is reversed, and a *venire facias de novo* awarded.