# Friday *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Eminent domain — Evidence — Qualifications of experts — Cross-examination.*

A witness to be qualified to testify as to land values should be familiar with the property in question, its area, and the uses to which it may reasonably be applied, the extent and condition of its improvements, and a knowledge of the general selling price of ground in the neighborhood at the time.

In fixing the general selling price such price is not to be shown by particular sales, of alleged similar lots, but it is to be fixed in the mind of the witness from a knowledge of the price at which lots are generally held for sale and at which they are sometimes actually sold in the course of ordinary business in the neighborhood.

Testimony for this purpose should not be accepted against objection upon the mere assertion of the witness that he knows the values. His averment should be tested by having him designate the properties in the vicinity with which he is acquainted, and set forth the source of his knowledge of their values; he should be able to give a satisfactory reason for his opinion and show that it rests upon a substantial foundation, and is not a mere guess.

Where a witness offered as an expert has testified as to his qualifications, an opportunity should be afforded to the opposing side to cross-examine him, before he is permitted to express an opinion as to values.

Where a witness has given his opinion as to value, and then states that

204    405
207    ¹174

204    405
210    ¹213

204    405
214    ¹277

204    405
f215   ⁴584
  31 SC ³149

204    405
216    ⁴536
216    ¹537
f 33 SC ⁸576

204    405
f219   ⁵403

204    405
  35 SC ¹ 12

204    405
c224   ¹123

he would give that amount for the property, the court should not charge the jury in such a manner as to leave the impression upon their minds that the estimate of the witness was entitled to great weight by reason of his apparent willingness to back it up, by taking the property himself at the figure named.

Argued Oct. 27, 1902.   Appeal, No. 18, Oct. T., 1902, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 679, on verdict for plaintiff in case of Elizabeth F. Friday v. Pennsylvania Railroad Company.   Before Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ.   Reversed.

Appeal from jury of view.   Before Stowe, P. J.

At the trial the court admitted under objection and exception the opinions of various witnesses offered as expert, as to values. [1–9]

The qualifications of these witnesses are stated in the opinion of the Supreme Court.

The court charged in part as follows :

[We have in this case, gentlemen,—and we have no reason to believe that there was a man brought on the stand that did not tell you just exactly what he believed—on the one side we have it running from $60,000 to $75,000 and $80,000, as the probable selling value of this property, what it would probably bring.   On the other hand, we have it running from $200,000 to $275,000, probably a little more.   One witness when asked, said that he thought it was worth $235,000, and there was one witness who said, I believe, that he would give $250,000 for it, whether he had the money or not.   But he said so, and the evidence is for you to consider ; because if a man is able to p'ay for property at the price fixed, where he satisfies you that he is able and willing to pay that price, when the question of values comes up, it is some evidence as to what it would fairly bring, because if he would give it, it would fetch it ; but that kind of testimony is to be looked at carefully, and should have very slight weight, because if we do not know ourselves what we would be able to do, it is not of much value.   I might be willing to give $100,000 for a piece of property very gladly if I had the money, but if I did not have it, I might not be able to buy

it. So I merely suggest it to you as indicating that, while it is not conclusive as to what the property is worth, and while it may be considered, it is not to be considered absolutely as indicating to the jury what they ought to render a verdict for.] [10]

Verdict and judgment for plaintiff for $233,994. Defendant appealed.

*Errors assigned* were (1–9) rulings on evidence, quoting the bill of exceptions; (10) portions of charge as above.

*Thomas Patterson,* with him *James R. Sterrett* and *M. W. Acheson, Jr.,* for appellant.—The witnesses offered as experts were not properly qualified: Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325; Michael v. Crescent Pipe Line Company, 159 Pa. 99; Mewes v. Crescent Pipe Line Company, 170 Pa. 364.

Defendant's counsel had the right to cross-examine the witnesses produced upon values on the part of the plaintiff, for the purpose of ascertaining their qualifications in advance of an expression of opinion by them to the jury: Michael v. Crescent Pipe Line Co., 159 Pa. 99; First Nat. Bank of Easton v. Wirebach, 12 W. N. C. 150.

The charge was erroneous: Balt. & Phila. R. R. Co. v. Springer, 21 W. N. C. 143; Penna. S. V. R. R. Co. v. Cleary, 125 Pa. 442.

*Walter Lyon,* with him *Charles H. McKee* and *H. Walton Mitchell,* for appellee.—The witnesses were competent: Del., etc., Steam Towboat Co. v. Starrs, 69 Pa. 36; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Allen's App., 99 Pa. 196; Ryder v. Jacobs, 182 Pa. 624; O'Brien v. Schenley Park, etc., Ry. Co., 194 Pa. 336.

We deny that at every step of the trial where the question of competency arises, the defense has a right to indulge in cross-examination: Penna. R. R. & Canal Co. v. Bunnell, 81 Pa. 414; Struthers v. Philadelphia & Delaware County R. R., 174 Pa. 291; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Dorlan v. East Brandywine, etc., R. R. Co., 46 Pa. 520.

OPINION BY MR. JUSTICE POTTER, January 5, 1903:
This appeal is from a judgment entered upon the verdict

of a jury, fixing the market value of a certain property situated at the corner of Eleventh street and Liberty avenue in the city of Pittsburg. The assignments of error challenge the competency of certain witnesses, who testified on behalf of the plaintiff. It is contended that they did not show sufficient knowledge of the subject-matter of the inquiry, to qualify them to give an opinion as to the value of the property in question.

The knowledge which is essential to qualify a witness to testify as to land values, is clearly defined in Pittsburg, etc., Railway Company v. Vance, 115 Pa. 325, and reiterated in Michael v. Crescent Pipe Line Co., 159 Pa. 99. The requirements imply familiarity upon the part of the witness with the property in question, its area, and the uses to which it may reasonably be applied, and the extent and condition of its improvements. But this is not all. Another essential, by reason of the necessity for comparison, is a knowledge of the general selling price of ground in the neighborhood at the time. In fixing this, regard must be had also to the rule, that the general selling price is not to be shown by evidence of particular sales, of alleged similar lots, but is to be fixed in the mind of the witness, from a knowledge of the price at which lots are generally held for sale, and at which they are sometimes actually sold, in the course of ordinary business in the neighborhood. While not easy to define with accuracy, yet there is such a thing as market value. And in an inquiry such as the present, this is to be ascertained from the testimony of those, who by special knowledge, or opportunity for observation, are in possession of the data from which a proper estimate can be made.

Testimony for this purpose should not be accepted against objection, upon the mere assertion of a witness that he knows the values. His averment should be tested, by having him designate the properties in the vicinity with which he is acquainted, and set forth the source of his knowledge of their values; he should be able to give a satisfactory reason for his opinion, and show that it rests upon a substantial foundation, and is not a mere guess. The rule is clearly laid down in Michael v. Pipe Line Company, supra, that in establishing the competency of witnesses called to give an opinion as to the market value of land, it must affirmatively appear that they

have the requisite personal knowledge of the subject-matter of the inquiry, and the source, extent and character of that knowledge must be satisfactorily shown.   These requirements were not met in the case of a number of the witnesses called upon the part of the plaintiff, and if their competency be measured by this standard, they fall short.   They were lacking in knowledge of the general market value of neighboring property, or if they possessed that knowledge, the fact was not made to appear.

For instance, Mr. C. F. Klopfer testified, that he thought he had a knowledge of the valuation of property in the neighborhood, but did not exhibit in any particular the extent, source or character of his knowledge.   Notwithstanding this, his attention was at once directed to the property which was taken, and his opinion as to its value was asked.   Objection was made upon the part of the defendant, on the ground that the witness had not shown any general knowledge of values, and leave was asked to cross-examine him, as to his knowledge in this respect.   This was refused, and the witness was allowed to express his opinion, that the value of the property was about $250,000.   His reason for placing it at that figure was, as stated in the immediate connection, his willingness to give that amount for it himself.   Upon cross-examination he admitted that this was his only reason, as he had not heard of any sales (except to the defendant), and he did not know the figures asked for property in the same square, or in adjoining squares.   Referring to his valuation again, he said, "It is merely my own idea, what I would give for it as a speculator, and I think it is worth it."

The only knowledge which the witness seemed to have of the value of property in the vicinity was of the price paid by this same defendant for some adjoining pieces.   And this being only of particular sales, for a particular purpose, was not evidence of the general selling price of ground in the neighborhood.

Mr. N. L. Gleason, in fixing his valuation, was evidently influenced largely by what he termed the earning capacity of the property, arising from the fact that the building upon the lot was a licensed house for the sale of liquors.   It did not appear that he knew of the value of any property in the neighborhood,

or of any sales which were made, except that of the adjoining property to this same defendant.

Mr. William Scott, when asked if he was familiar with the value of property in that vicinity, replied, "Well, only from what I heard of some sales." Objection was made to his competency, and counsel for defendant asked leave to cross-examine. This was refused by the trial judge, after the witness had simply asserted that he was familiar with the value of property in the neighborhood. After being allowed to express his opinion that the property was worth $5,000 a front foot, the witness admitted upon cross-examination, that the only sales that he had heard of in the neighborhood were of adjoining properties purchased by the defendant company; and that the highest of these sales was at the rate of $3,600 a front foot, another being at $2,500, and another at $1,500 a front foot. And while in the outset he had given as the basis of his familiarity with values, these sales of which he had heard, yet he eventually admitted that his estimate was not based upon these sales at all, but that he was getting away from them altogether.

James B. Lawler, after saying that he knew the values of property in the neighborhood of Eleventh street and Liberty avenue, estimated the value of the property in dispute as being $225,000. Immediately afterwards on cross-examination, he admitted that he had not bought or sold property in that neighborhood; that he knew of no sales outside of those made to the same defendant, of adjoining pieces; and that he did not know the price at which people held their property in that neighborhood, on the squares between Tenth and Eleventh, and Eleventh and Twelfth streets. Under these admissions, it is difficult to see what there was left, within the knowledge of this witness to be used as the basis of any intelligent comparison of values.

And so, without taking up in detail the testimony of other witnesses who were allowed to give their opinion in this case, the same criticism applies to them. They either had not sufficient actual personal knowledge of the value of the property in the neighborhood, to use it intelligently as the basis upon which to estimate the value of the property in question, or if they had such knowledge, it was not shown to the court. A striking difference appears between the estimates of some of these witnesses, and those of others whose training and observation,

seemingly had fitted them to speak accurately as to market values. As against estimates of about $235,000, the four experienced city assessors placed the market value of this property at from $70,000 to $80,000, the assessed valuation being much less. Further than this, in the case of certain of the witnesses, the disqualification was not merely negative, but it was manifest that their estimates were based upon the particular use to which the property was applied at the time, and that the value of the license to sell liquor upon the premises, and the profits of the hotel business, were controlling elements in the minds of these witnesses, in estimating the value of the property.

The assignments of error must, therefore, be sustained, in so far as they relate to the admission as evidence, of the opinions of a number of witnesses, whose competency had not under the established rule, been clearly shown to the court.

There is also involved in this appeal, the question of the right of defendant's counsel to cross-examine as to the qualifications of a witness, before giving expression to an opinion as to land values. This point too, was ruled in Michael v. Pipe Line Company, supra, when Justice STERRETT, after pointing out that actual personal knowledge upon the part of the witness, must affirmatively appear, and that its possession cannot be assumed, went on to say: " Hence the possession and sufficiency of such knowledge should be made to appear and be passed upon by the court before the witness should be allowed to express an opinion."

The question of the competency of the witness, is always for the court. But in deciding, it should have the benefit of every reasonable aid, and nothing could be more effective than a cross-examination, within proper limits. Aside from this, if the opposing counsel are not satisfied with the correctness of the statements of the witness as to his ability to give an opinion, they are justified in asking for an immediate opportunity to apply the test of cross-examination, and it should be allowed.

In charging the jury, the trial judge referred to the fact that one witness, after giving his opinion as to value, had said that he would give that amount for the property. In commenting upon this statement, the learned court very properly instructed the jury that such testimony was " to be looked at carefully

and should have very slight weight." But in further elaborating, he inadvertently destroyed the effect of this instruction by adding, that while that evidence was "not conclusive as to what the property is worth," yet it was to be considered but, was "not to be considered absolutely as indicating to the jury what they ought to render a verdict for."

This last suggestion could hardly have failed to reinstate in the minds of the jury, the idea which they would be apt to take in the first instance, that the estimate of this witness was entitled to great weight, by reason of his apparent willingness to back it up by taking the property himself at the figure named. Any such impression would be wrong, and its influence would be misleading, because the subject of inquiry before the jury was the market value of the property, and not what a particular witness, having in view a special purpose, might be willing to give for it, if he had the money. The tenth assignment of error is, therefore, also sustained.

The judgment is reversed, and a venire facias de novo awarded.