# Hoffman *v.* Berwind-White Coal Mining Co., Appellant.

*Mines and mining — Surface support — Measure of damages — Punitive damages—Witnesses—Experts—Opinion of nonexperts—Harmless error—Appeals.*

1. In an action against a mining company to recover damages for injuries caused by failure to leave sufficient surface support, with resulting failure of water supply, the damages are measured by the difference between the market value of the land before and after the injury.

2. In such a case where the court in its charge indicates the proper measure, a judgment for plaintiff will not be reversed, because witnesses were asked to give their opinion in regard to the "value" or "worth" of the land, before and after the injury, where it appears from the questions put to the witnesses that the terms were used in the sense of market values.

3. Nor can defendant complain that the fixing of the time of the injuries from 1912 to 1914 was reversible error, because there was some evidence of a diminution of a spring in 1910 where it appears that the robbing of the mine of surface support, and the material destruction of the water supply, occurred during the period from 1912 to 1914, and that the case was tried mainly on this theory.

4. Anyone who is aware of the relative value of the property may testify as to damages, although no expert; but the appellate court will not reverse because the witnesses' qualifications were not fully brought out where defendant was not denied opportunity to cross-examine before the testimony was given.

5. Failure of the trial judge to charge in particular language as to market value, in absence of request by counsel at the trial, is no ground for reversal, where the charge is not incorrect.

6. Assignments of error to the action of the trial judge in permitting the jury to find punitive damages, will not be considered where the verdict of the jury shows that they did not include such damages.

7. Where a claim for punitive damages for failure to afford surface support, is based on the fact that defendant had, on other lands in the neighborhood, caused surface subsidence, the plaintiff must further show such similarity in the condition of the mines, as leads reasonably to the conclusion that the result of an excavation in one, would be the same as a similar excavation in another.

*Evidence—Failure to produce evidence within control of a party.*

8. Failure to produce evidence within the control of a party, and which it would naturally be of his interest to produce, or failure to give satisfactory reason for its omission justifies an inference that the evidence, if produced, would have been unfavorable.

*Evidence—Rebuttal—Order of proof—Discretion.*

9. Evidence in surrebuttal will be limited to explain matters requiring explanation and to answer new matter brought out by plaintiff in rebuttal and which defendant could not have foreseen or provided for in his defense. This, like other matters connected with the conduct of the trial, is largely within the discretion of the trial court.

*Practice, C. P.—Improper remarks of counsel—Trial.*

10. In an action for damages against a mining company, it is reversible error for the trial court to refuse a motion to withdraw a juror, after counsel for plaintiff in his final argument to the jury has referred to the defendant as an "octopus" and this "sneaking, hiding, skulking coal company." Such language is not justified because the defendant throughout the trial failed persistently to produce certain maps and records which it had been subpœnaed to produce.

Submitted September 29, 1919. Appeal, No. 91, Oct. T., 1919, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1915, No. 547, on verdict for plaintiff, in case of Samuel S. Hoffman v. Berwind-White Coal Mining Company. Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Trespass to recover damages for injuries to land ·by exhaustion of water supply from failure to afford adequate surface support. Before STEPHENS, P. J.

Verdict and judgment for plaintiff for $14,000. Defendant appealed.

*Errors assigned* were (1-5) various rulings on evidence and instructions.

*Forest & Percy Allen Rose* and *Uhl & Ealy*, for appellant.—A number of plaintiff's witnesses were not competent to express opinions as to values: Pittsburgh, Virginia, etc., Ry. v. Vance, 115 Pa. 325; Pittsburgh & Western R. R. v. Patterson, 107 Pa. 464; Reed v. Pittsburgh, C. & W. R. R. Co., 210 Pa. 211; Michael v. Crescent Pipe Line Co., 159 Pa. 99; Davis v. Penna. R. R. Co., 215 Pa. 581; Parry v. Cambria & Indiana R. R. Co., 247 Pa. 169.

The court erred in merely saying that market value was that which any one would be willing to pay for it who might be in the market for such property, regardless of the consideration or necessities which induced him to purchase it: Fortney v. Breon, 245 Pa. 47; Burns v. Penna. R. R., 239 Pa. 207; Mastel v. Walker, 246 Pa. 65.

The court erred in not withdrawing a juror: Saxton v. Pittsburgh Rys. Co., 219 Pa. 492.

*Graham & Yost* and *R. T. M. McCready*, for appellee, cited as to punitive damages: Lord v. Meadville Water Co., 135 Pa. 122; Jiles v. Jiles, 64 Pa. Superior Ct. 565.

OPINION BY MR. JUSTICE FRAZER, January 5, 1920:

Plaintiff is the owner of a farm in Cambria County consisting of 206 acres divided into two tracts, one containing 158 acres, on which is located the farm buildings, and the other 48 acres; the two tracts being separated by a narrow strip of defendant's land. Defendant owned the coal underlying plaintiff's land with the duty of surface support. Plaintiff claims defendant in operating its mine failed to leave sufficient surface support, with the result that the surface settled and cracked, causing the loss of streams of water, springs and wells on plaintiff's land, thereby greatly depreciating its value for farming, dairying, stock-raising and fruit growing. A mass of testimony was taken at the trial resulting in a verdict for plaintiff for $14,000 as damages for injuries to the land. Defendant's motion for a new trial was overruled and judgment entered, and this appeal followed. The case as a whole was carefully tried; there are, however, errors in the record necessitating a retrial.

In view of the fact that the case must be retried we deem it advisable to pass upon all questions raised in this appeal, which will be done in the order discussed by appellant's counsel in their paper-book.

The first question raised is covered by assignments of error numbers 1 to 41, and relates to the admission of testimony on the measure of damages. The general rule is conceded that in cases of this kind the damages are measured by the difference between the market value of the land before and after the injury. The trial judge in his charge to the jury indicated the proper measure: it is complained, however, plaintiff's witnesses, instead of being interrogated as to the market value of the land before and after the injuries, were asked to give their opinion in regard to the "value" or "worth" of the land in 1914 unaffected by the injuries mentioned and then their opinion of the "value" or "worth" after the injuries were completed. While the terms used might lead

to confusion, it is apparent they were used in the sense of market value, and from the questions put to the various witnesses they could not have misunderstood the real object, which was to discover the market value of the premises before and after the injury.

With respect to the further complaint that the evidence showed the injuries began in 1910 and that the inquiry of the witnesses covered a period of time from 1912 to 1914, thus leaving an interval of two years as to which no evidence was presented concerning any change in the value of the land, there is testimony one spring on plaintiff's premises first diminished in 1910 and finally disappeared in 1911; it does not appear, however, that this loss of water materially affected the value of plaintiff's farm, as the water supply from the natural sources permitted it to be used in the ordinary manner and for farming purposes and stock-raising up to the year 1912, at which time, owing to the drying up of springs, the depreciation in the water supply became materially noticeable, which condition increased until 1914 when the supply failed in all the springs, requiring the development of an artificial water system by means of reservoirs and ditches. The court charged there was no testimony to show the time that might be expected to elapse between the removal of the support and the results appearing upon the surface, but, as this might depend upon the circumstances and conditions, it was for the jury to determine. The weight of the evidence appears to be that the robbing of the mine of surface supports, and the destruction of the water supply resulting from such action, occurred during a period from 1912 to 1914 and the case was tried mainly on this theory. Plaintiff succeeded in getting along with the natural water supply until 1913, at which time he was obliged to construct two cisterns which were supplemented by a third in 1915. Under the evidence, the fixing of the time from 1912 to 1914 cannot be held to be reversible

error, and in absence of other errors in the record we would not reverse for the reason here urged.

It may be suggested, on a retrial of the case, the rule fixing the measure of damages as the difference in the market value before and after the injury as laid down in Weaver v. Berwind-White Coal Co., 216 Pa. 195, and cases there cited, should be strictly followed.

With respect to the competency of witnesses offered by plaintiff to prove market value, while several of those called could not qualify as experts, they were residents in the neighborhood for many years and had known the farm for a considerable time. Market value is not a question of science and skill upon which experts alone may give an opinion, but a witness shown to have personal knowledge of the property, its location, buildings, uses, environments and sales of other land in the immediate vicinity, is competent to testify: Pittsburgh, etc., R. R. v. Vance, 115 Pa. 325; Michael v. Pipe Co., 159 Pa. 99. The knowledge the witness should be required to possess must necessarily depend upon circumstances. He should, however, have special opportunity for observation and in general have in mind all necessary data to form the basis of his opinion, that he may, if called upon, enable the jury to determine the reliability of his judgment: R. R. v. Vance, supra. The question of the competency of the witness is a preliminary one to be determined by the court; but the opposing litigant should be afforded an opportunity to cross-examine as to qualification before receiving the testimony: Friday v. Penna. R. R., 204 Pa. 405. Although a witness may not be able to fix a market price, if he is aware of the relative value of the property his evidence is admissible in connection with the testimony of others as to value: Dawson v. Pittsburgh, 159 Pa. 317; First Pres. Church v. Pittsburgh, 223 Pa. 165. While the qualifications of the witnesses were not fully brought out it does not appear that defendant was denied an opportunity to cross-examine before the testi-

mony was given. If defendant believed the witnesses were incompetent it would have been an easy matter to demonstrate that fact by cross-examination and the testimony thus shown to be worthless would, no doubt, have been excluded by the trial judge. While, under the circumstances, the admission of this testimony would not constitute sufficient cause for reversal, care should be taken in the next trial to clearly demonstrate the qualifications of the witnesses before their testimony is received.

The 49th assignment, complaining that the trial judge in defining market value to the jury adopted an improper definition, cannot be sustained. The court charged the market value would be the price at which the property could be sold in the market, or which one in the market for such property would be willing to pay for it. True, the definition was brief and, as defendant points out, failed to state it should include a consideration of the extent and condition of the improvements, the quantity and productive qualities of the land and the purposes to which it might be reasonably applied, yet this is merely a statement of the matters to be considered in determining what constituted market value, and the definition as given was not incorrect. If counsel desired a fuller explanation of the meaning of the words "market value" they should have embodied their desire in written points and, not having done so, failure of the trial judge to charge in particular language is not ground for reversal: Murtland v. English, 214 Pa. 325; Com. v. Pacito, 229 Pa.. 328.

The assignments complaining of action of the trial judge in permitting the jury to find punitive damages would not require consideration, in view of the finding of the jury that the damages allowed were merely for the value of the land, if not for the fact a new trial must be allowed. Before the question of punitive damages can be submitted to the jury there must be evidence the act complained of was committed wilfully and ma-

liciously, or under circumstances of violence or reckless indifference to the rights of others: Phila. Traction Co. v. Orbann, 119 Pa. 37; Wright v. Phila. Rapid Transit Co., 236 Pa. 132. The claim for punitive damages is based mainly on the fact that, previous to the injury to plaintiff's land, defendant had, by its acts on other land in the neighborhood, caused the surface to subside and streams to become dry, and it is argued from this defendant must have known the result to plaintiff's property when it removed the supports under his land and hence acted in willful disregard of plaintiff's right. No facts, however, were shown to justify the conclusion that the removal of supports under plaintiff's property would produce the same result as the removal of supports in other mines referred to. To support this contention plaintiff's duty was to go further and show such similarity in the condition of the mines as leads reasonably to the conclusion that the result of an excavation in one would be the same as a similar excavation in another, in which case defendant would be bound to anticipate certain results as likely to follow from the excavations made.

The refusal of the trial judge to affirm without qualification defendant's sixth point for charge is made the subject of the 51st assignment of error. The point as drawn asks the court to charge conclusively a claim for damages is not sustainable for the drying up of streams on plaintiff's farms, as they contained no water as they entered his land from the adjoining farm, and no evidence was adduced to show negligence by defendant in mining under that farm. The qualification made by the court, that it was for the jury to determine whether the water in fact decreased as a result of lack of support of the surface under plaintiff's farm, there being no evidence that the streams were affected because of the mining on adjoining property, through which they flowed before entering plaintiff's land, was proper in view of the fact it appeared the streams in question were fed par-

tially by springs on plaintiff's farm and the complete loss of water in the streams followed the drying up of such springs, which may have been due in part to the alleged negligent withdrawal of supports under plaintiff's land. This assignment is not sustained.

The 52d assignment complains of the refusal of the court to charge as requested in defendant's 9th point, which was, in substance, that, in view of the fact plaintiff in 1905 had a survey of the ground made by his engineer in which were shown three springs and two wells marked "dry," and as plaintiff, or his engineer, was in possession of a blue print of this survey which he failed to offer in evidence at the trial, a presumption would arise that the survey of 1905 represented conditions actually existing at that time. The materiality of this point lies in the fact that if the springs in question were actually dry in 1905, then the statute of limitations had barred any claim for damages which might have existed. That plaintiff was in possession of this map and failed to produce it went far toward an admission on his part that the facts were as stated on the plan and his act in instructing the engineer not to divulge any information concerning the existence of the maps indicated an attempt on plaintiff's part to conceal the true state of facts. Failure to produce evidence within the control of a party, and which it would naturally be of his interest to produce, or failure to give satisfactory reason for its omission, justifies an inference that the evidence, if produced, would be unfavorable: Iddings v. Equitable Gas Company, 8 Pa. Superior Ct. 244. Such inference would, of course, be rebuttable, but defendant was entitled to the benefit of the deduction and, in fact, requested nothing further. The point should, therefore, have been affirmed. While the act of plaintiff or his counsel in changing the plan by erasing the word "dry" and substituting numbers, if unexplained, would appear as highly improper and subject plaintiff to the charge of attempting to conceal or manufacture evidence and

thus warrant a further presumption that he was conscious his present cause was an unjust one and that the map would operate against him, yet the explanation given to the effect that the change was made because the court refused to admit the map in evidence with the words "dry spring" on it and ordered it remodeled by erasing these words absolved plaintiff from any blame in this respect. The 9th point as drawn merely asked that the jury be permitted to presume the map correctly represented conditions as they existed at the time it was made and should have been affirmed without qualification. This assignment of error is sustained.

The 42d assignment is to the refusal of the trial judge to admit certain evidence in surrebuttal, the refusal being based on the ground that the evidence offered was a matter defendant should have shown at an earlier period in the trial and was not proper surrebuttal of any previous testimony. The rule is well established that evidence in surrebuttal will be limited to explain matters requiring explanation and to answer new matter brought out by plaintiff in rebuttal and which defendant could not have foreseen or provided for in his defense: Asay v. Hay, 89 Pa. 77. This, like other matters connected with the conduct of the trial, is largely within the discretion of the trial court: Koenig v. Bauer, 57 Pa. 168; Young v. Edward, 72 Pa. 257; and we see nothing in the record which warrants a reversal on the ground of abuse of discretion.

The 43d and 44th assignments specify improper remarks by counsel for plaintiff in his final argument to the jury. The language complained of refers to defendant as an "octopus" and this "sneaking, hiding, skulking Berwind-White Coal Company." Counsel for defendant promptly asked that a juror be withdrawn, which motion was denied by the court. The words used were clearly harmful and calculated to incite the prejudice of the jury against defendant and fell within the scope of the statement of this court in Wagner v. Hazle

Twp., 215 Pa. 219, 225, where we said: "The obligation of fidelity to the court which an attorney assumes on his admission to the bar is ever thereafter with him, and when he attempts to defeat the justice of the cause by interjecting into the trial wholly foreign and irrelevant matter for the manifest purpose of misleading the jury, he fails to observe the duty required of him as an attorney and his conduct should receive the condemnation of the court." See also Saxton v. Rys. Co., 219 Pa. 492. Counsel for plaintiff seeks to excuse the language on the ground that defendant throughout the trial failed persistently to produce certain maps and records which it had been subpœnaed to produce. While it appears defendant took advantage of every technicality to justify its failure to produce the records in question, and conceding with the court below that such action justified adverse comments in the argument of plaintiff's counsel, yet counsel should bear in mind that a distinction exists between justifiable argument and language calculated to produce a verdict based on prejudice rather than the facts in the case and should be careful not to exceed the bounds of proper and legitimate argument notwithstanding provocation. As stated above in this opinion the failure to produce evidence within the control of a party may be made the basis of an inference that such evidence would be prejudicial to the party's cause if produced. This very argument was used by defendant in this case, as noted above, and it cannot, therefore, complain that the same rule should be applied to similar conduct on its part. Regardless of the provocation, however, plaintiff was not justified in going beyond the realm of proper and legitimate argument and in using language appealing to passion and prejudice, rather than the judgment of the jurors. These assignments of error are sustained.

The judgment is reversed and the record remitted with a new venire.