## Albert P. Lewis v. The Springfield Water Company, Appellant.

*Evidence—Competency of witness—Weight of testimony for jury.*

In an action to ascertain the actual depreciation in the value of property caused by the taking of water under the right of eminent domain, where the examination of a witness shows that he has some knowledge of the value of property in the neighborhood of that in question, he is entitled to testify; the value of his testimony being for the jury.

*Eminent domain—Water—Storage thereof—Measure of damage.*

Where damages are being assessed against a water company for water taken out of a stream under the right of eminent domain, and the proper exercise of the franchise of the company required the storing of the water during the day and its use during the night, and such storing is injurious to the plaintiff's property, the jury may consider the manner of the taking of the water, not as a separate item to be estimated by itself, but as an element of damage in determining the actual difference in the value of the property caused by the appropriation of the water.

Argued Feb. 13, 1896. Appeal, No. 95, Jan. T., 1896, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1893, No. 85, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Appeal from award of jury of view assessing damages for taking water from stream. Before CLAYTON, P. J.

On the trial Isaac M. Lewis, called by plaintiff, testified as follows:

Q. Mr. Lewis, did you know the location of this property? A. Yes, sir. Q. The distance from railroads, what kind of

roads to haul over? A. Yes, sir. Q. For what purpose is this water best adapted? A. For manufacturing cotton goods. Q. Do you know of any other property that was sold on that stream since? A. Yes, sir. Up at Beatty's Mills. Q. Did you know what that brought? A. I am not positive. Q. Did you hear at that time? A. Yes, sir. Q. Now, Mr. Lewis, at that time what was on that property? A. An old ax factory, grist mill.

The Court: If he knows its value at the time of the taking of this water.

Q. Do you think you are competent to tell the value of properties like this at the time it was taken by the water company? A. I think not. Q. Could not you fix a value on this property? A. I think I have sufficient knowledge to be able to judge.

Mr. Broomall, for defendant:

Q. Mr. Lewis, you have been in what business since you left this property? A. Farming. Q. You have no interest in this property? A. No, sir. Q. And you have never had any occasion to have your mind turned towards the value of it only by observations, and you don't know any more than other persons living in the neighborhood would know? A. I think I would; I had the mill. Q. Did you take any time to measure it in any way? A. No, sir. Q. Did you say you knew of one property between the property and the creek being sold, that of Beatty's, did you know any other? A. No, sir. Q. Your property is farm land? A. Yes, sir. Q. Have you ever had any occasion to value mill properties? A. No, sir. Q. Can you say therefore that you are acquainted with general market value of mill properties on Crum creek? A. No, I can't say that. I have some idea. Q. Do you know of one property on the creek in which you could say that you are competent in your opinion to form a reliable judgment, in your opinion to form the value of it? A. No, sir. Q. Your capacity with your information is derived from being the owner of this mill once and lived in the neighborhood? A. Well, when I was in the business. Q. I mean the information derived? A. Well, of course I was there a great many months, but I would not be supposed to be familiar with that now as I was then. Q. You don't know anything about the quantity of power that is taken from the creek by

the water company? A. No, sir. Q. Do you know if the same machinery in the mill was there when you were there? A. About the same machinery, yes, sir, I presume. Q. How much power does it take to drive it? A. I don't know.

Mr. Darlington, for plaintiff :

Q. Did you sell this property? A. Yes, sir.

The Court: I think he is competent to testify to the best of his knowledge.

Objection.

Q. Take the property as it was at the time before the defendant located on the stream and took the water, what in your opinion was a fair selling value at that time? A. I should say $60,000. Q. What in your opinion is a fair selling value of it immediately after the location and the right of the water company to take two million gallons of water, and affected by such taking, now shows on the value of the mill and this property?

Objection, exception and bill sealed for defendant.

A. It has been damaged at least $25,000. [1]

Jonathan Wolfenden, called by plaintiff, testified :

Q. Do you know of any sales of mill properties on this stream? A. No. Q. Have you heard of any? A. No. Q. From your business and your knowledge of manufacturing, do you consider yourself competent to tell us the values of water power of mill properties? A. I should put it very high. Q. I am asking now, taking a water power mill, cotton mill such as the Albert Lewis mills, do you consider yourself competent to tell the value of such property? A. I don't think I could tell you what it would fetch at a sale. Q. I mean before the water company came there, do you know the value, are you competent to judge what would be a fair value of the property before the water company came there? A. I don't think I am.

Q. You had a factory on Cobb's creek? A. Yes, sir. Q. How long did you own that property? A. Since 1864. Q. You lived in Delaware county? A. For forty-eight years. Q. Do you know of the location of mills in different parts of the county in your line of business?

The Court:

Q. Do you know what these mill properties are generally held and sometimes sold for? Do you think you are competent to tell what this property was worth unaffected by this water company? A. Yes, sir.

The Court: Let him testify.

Objection, exception and bill sealed for defendant.

Q. What was this property worth before the Springfield Water Company came there? A. Fifty thousand dollars. Q. Do you know where the works are located? A. Yes, sir. Q. And you know that they are supposed to only take two million gallons of water per day? A. Yes, sir. Q. Well, state what in your judgment the effect of that would be upon the selling value of this property as a water power and mill.

The Court: For any purpose for which the water could be used.

A. It would not be worth one half the price it was before. Q. If that amount of water was taken? A. Yes, sir. [3]

Henry Kent, called by plaintiff, testified under objections and exception:

Q. Now, Mr. Kent, you say you have recently purchased property, do you consider yourself competent to judge the value of the mill property, such as this from the purchase you have made? A. I have a fair idea of the cost.

The Court: Affected by the taking of this water? A. I have. Q. Well, what do you think it is worth?

Objection, exception and bill sealed for defendant.

A. Forty thousand dollars.

The Court:

Q. Now, as affected by the taking of this water, what would you value it at? A. Very hard to find a buyer at any price. Less than one half I should say. Q. You think that they have injured it more than half? A. I think they have taken away all. [4]

The defendant's sixth point and answer were as follows:

6. The water company, defendant, in addition to its right by statute to the appropriation of the water stipulated for, has the right as a riparian owner to the reasonable use of the waters of the creek and has a right to dam the water and discharge it at such times as is consistent with a reasonable exercise of its rights as a riparian owner. The discharge of the retained water at night is either a legal or illegal exercise of such right. If legal, then such use of the waters must not be considered by the jury in estimating damages. If illegal, the plaintiff has his remedy hereafter either to prevent it or to obtain compensation

in damages by suit, and this question must not enter into the calculation of damages in this case. *Answer :* We cannot affirm or negative this point without qualification. If we affirm it, it would have no bearing upon the issue, unless we go a step further and say whether it is legal or illegal to dam up the waters during the daytime and discharge them by night.

If the proper exercise of this defendant's franchise requires it to store the water during the day that it may pump a necessary quantity during the night, and if the necessary storing of the water is injurious to the plaintiff, then the jury may consider this an element of damage. The jury may undoubtedly consider the effect this storage in the daytime will have, and has had, upon the stream, as tending to harmonize the testimony. While the pumping of two million gallons of water might not visibly affect the stream, the storing during the day might have some effect. The point, with this qualification, is affirmed. [6]

Verdict and judgment for plaintiff for $9,600.75. Defendant appeals.

*Errors assigned*, among others, were (1–4) rulings on testimony; (6) answer to defendant's sixth point, quoting bills of exception, evidence, point and answer.

*William B. Broomall*, with him *Isaac Johnson* and *Edward H. Hall*, for appellant.—The expert testimony was incompetent: Michael v. Pipe Line Co., 159 Pa. 99; R. R. Co. v. Vance, 115 Pa. 325. The sixth point intended to eliminate from the case any interference with the flowing of the stream and to confine it to a diminishment of the creek. Every riparian owner owns the right to the use of the stream limited only by the reasonable demands of his business : Hoy v. Sterrett, 2 W. 327; Hartzall v. Sill, 12 Pa. 248; Hetrich v. Deachler, 6 Pa. 32; Whaler v. Ahl, 29 Pa. 98.

*V. Gilpin Robinson* and *George E. Darlington*, for appellee.— As to expert testimony : R. R. Co. v. Bunnell, 81 Pa. 414; R. R. Co. v. Vance, 115 Pa. 325; Curtin v. R. R. Co., 135 Pa. 30; Jones v. R. R. Co., 151 Pa. 30; Dawson v. Pittsburg, 159 Pa. 318; Beck v. R. R. Co:, 148 Pa. 271; Allen's Appeal, 99 Pa. 202.

The right of an upper riparian owner is not measured by the reasonable demand of his business, but the water belongs to both the upper and lower owners, and if the former wants more than his share he must make it his own by purchase: R. R. Co. v. Miller, 112 Pa. 41; Clark v. R. R. Co., 145 Pa. 449; Lord v. Water Co., 135 Pa. 130; Haupt's App., 125 Pa. 211.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896:

This case in its facts is practically identical with the case of Lee et al. against the same defendant in which an opinion has just been filed ante, p. 223; but the questions raised are by no means the same.   The plaintiff is the owner of a cotton mill situated on Crum creek and employs both water and steam power to propel his machinery.   These are used in about the same proportions as in the mill of Lee et al., which was about forty-five horse power from his water wheel, and three or four times as much power from his steam engine.

The water company by taking two millions of gallons of water from Crum creek daily, reduces its capacity to the extent of two and one half horse power; and this during the dry season, or much of it, reduces to that extent the effective power of the plaintiff's water wheel.   This is a proceeding to ascertain the damages which the appropriation of this water inflicts upon the plaintiff.   The proper measure of damages is the actual depreciation in the value of the plaintiff's property caused by the loss of water.   This is ascertained by finding out its value before the water was taken, and its value after it was taken, and as affected by such taking.   When a witness is called to express an opinion upon this subject, it is entirely proper in a preliminary or upon cross-examination to explore the extent of his knowledge and to test his judgment by requiring him to particularize, and state the elements of his calculation.   His examination should show that he has some knowledge of the value of property in that neighborhood.   The value of his opinions will be likely to depend in the minds of jurors, upon the extent and thoroughness of the knowledge he is shown to possess, and for this reason such a line of examination is entirely proper.   The several assignments of error relating to the admission of the testimony of witnesses called to testify as to the value of the plaintiff's property before and after the taking of the water by

the defendant are not sustained.   The reasons urged in support of them go rather to the value or credibility of the testimony than to its admissibility.   The testimony was, as it looks on this record, extravagant, and some of it seems quite incredible, but that was for the jury.   No injury was alleged except that resulting from the loss of power, and that the loss of two and a half horse power from the efficiency of the water wheel during the dry weather of summer could have taken from $20,000 to $35,000 from the value of this property is a statement that neither the court nor jury could believe.   But a witness cannot be excluded from the witness stand because his testimony is absurd or contradictory or false.   If he is competent his evidence goes to the jury to be considered and weighed, with the other evidence in the case.

Nor do we see anything in the answer of the learned judge to the defendants' sixth point that requires the reversal of this judgment.   It seems to have been urged as one element of damage that the water company stored the water of the stream to some extent in the daytime and used it at night.   The point asked an instruction that if this was found to be so, such user of the water was either a lawful exercise of its franchise by the defendant, or it was an unlawful use of the stream ; and that in neither case could it be considered in this proceeding.   The answer was a practical affirmance of the point.

The learned judge said if the proper exercise of the franchise of the defendant required the storing of the water during the day and its use during the night, and if such storing was injurious to the plaintiff's property, then they should consider the manner, as well as the fact, of the taking of the water in making up their estimate of the plaintiffs' injury.   If the proper exercise of the franchise did not require this, then the subject was not to be considered in this proceeding.   This was a correct instruction.   The jury were not left to treat this element of damage, if they found it to exist, as a separate item to be estimated by itself, but were carefully instructed that the plaintiff should recover only for the actual difference in value of his property caused by the appropriation of the water.   This question which was apparently lost sight of in Lee et al. against the same defendant, was on the trial of this case kept prominently before the jury.   Their verdict may have done the defendant

injustice, but if so the remedy was in the court below.   On the whole case we see no sufficient reason for disturbing the judgment.   The assignments of error are overruled and the judgment affirmed.