A. W. Galbraith *v.* Philadelphia Company, Appellant.

*Pipe lines—Evidence—Qualification of witnesses.*

A witness in land damage cases should show that he has some knowledge of the value of lands in the neighborhood; having that he should be permitted to testify, the value of his opinion depending upon the extent and thoroughness of the knowledge he is shown to possess.

*Pipe lines—Evidence—Qualification of witnesses.*

Witnesses are qualified to testify in questions of damages by pipe line companies, who have lived near the land affected, who have been acquainted with it for many years, who have observed the pipe line and in a general way know the value of lands in the neighborhood. Such persons are competent to testify as ordinary witnesses, not as experts.

Argued May 13, 1897. Appeal, No. 128, April T., 1897, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1894, No..35, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Affirmed.

Appeal from award of viewers.   Before RAYBURN, P. J.

It appeared from the record and the evidence that this case arose from proceedings under the act of May 29, 1885, to assess damages to compensate the plaintiff for the easement imposed upon his farm by a pipe line for the transportation of natural gas.   The award of viewers was appealed from.   The judgment on a prior verdict was reversed by the appellate court in Galbraith v. Phila. Co., reported in 2 Pa. Superior Ct. 359.

It is alleged by the defendant that the preliminary questions and answers failed to show a knowledge on the part of plaintiff's witnesses in one or more of the three essentials necessary to qualify them to base an estimate, (1) a reasonable knowledge of the premises in dispute, including the location of the pipe line; (2) a knowledge of the value of land in the neighborhood, or (3) a knowledge of the effect of pipe lines upon farming lands.

Verdict and judgment for plaintiff for $650.   Defendant appealed.

*Errors assigned* were (1–3) In admitting the following testimony of witnesses for plaintiff, under objection by defendant:

Herman Schweitering sworn, examined by Mr. Patton: " Q. Where do you live?   A. Freeport.   Q. How far from this property of Mr. Galbraith?   A. About a quarter of a mile. Q. How long have you known it?   A. For thirty years.   Q. Do you know where this pipe line crosses it?   A. Yes, sir.   Q. Have you been along it since the pipe line has gone over it? A. Not all along it, I just saw it as I passed along the road, and in beyond the house, I have been over that.   Q. Are you acquainted with the general value of the property in the neighborhood of Mr. Galbraith's property?   A. Well, what I have heard people saying, I have not sold any myself.   Q. Are you acquainted with the general value of Mr. Galbraith's property there?   A. Why, I have heard what he has been getting for some that has been sold off of it.   Q. In your opinion what damage has Mr. Galbraith suffered by the depreciation of his land by reason of this strip that has been appropriated by the gas company? "

Mr. Buffington: That is objected to as incompetent, for the reason that the witness has not shown sufficient knowledge on which to base an estimate.

By the Court: We will overrule the objection, and on the request of the defendant, exception allowed and sealed.

"Q. Now just state Mr. Schweitering. A. I Would consider it a damage of $1,000."

No cross-examination.

James Stuart sworn, examined by Mr. Patton: "Q. Mr. Stuart, where do you live? A. South Buffalo. Q. How far from the property of Mr. Galbraith? A. About one mile. Q. How long have you known his property? A. Since—Well, I came into that country in January 9, 1867. I have known it ever since, partially two or three years before that. Q. Have you seen it since this pipe line has been laid over it? A. I have by passing along the road. Q. Are you acquainted with the general value of lands in the neighborhood in which Mr. Galbraith's property is? A. Only by report, reported sales. Q. Are you acquainted with the general value of his lands—land of Galbraith? A. I am pretty well acquainted with his farm, yes, sir. Q. In your opinion what damage has Mr. Galbraith suffered in the depreciation of his land by reason of the appropriation of this strip for gas purposes?"

Mr. Buffington: The question is objected to as incompetent, the witness not having shown sufficient knowledge to base an estimate.

By the Court: We will overrule the objection, and on the request of the defendant, exception allowed and sealed.

"Q. Just give the amount. A. Well, I could fix it—if it was my own, I would consider it was worth $1,000."

Mr. Buffington: We move to strike out the answer.

"Q. Not taking into account it being your own? A. I would consider it would depreciate the value of the property. Q. Whether you owned it or whether Mr. Galbraith owned it? A. Whoever owned it, if I was buying it, it would depreciate it that much."

No cross-examination.

L. W. Patterson sworn, examined by Mr. Patton:

"Q. Mr. Patterson, where do you live? A. I live down in South Buffalo near Freeport. Q. How far from the property of Mr. Galbraith? A. Well, I am about three miles south. Q. Are you well acquainted with that property? A. Yes, sir. Q. How long have you known it? A. Ever since I can

mind.  Q. About what is your age?  A. I will be 69, the 3d
day of April.  Q. Have you seen where this line has been laid?
A. Yes, sir.  Q. State whether or not there were any holes
or depressions in it.  A. Not filled level?  Q. Yes, sir.  A. Oh,
yes, they were not regular.  Q. What distance was it you could
see that, how far distant were you where you could see there
were holes in it?  A. Right along the line, I could see it from
the road too.  Q. Mr. Patterson, are you acquainted with the
value of the lands in the neighborhood of Mr. Galbraith's?
A. Only by hearsay.  Q. You are acquainted in that way by
what the people say about it?  A. Well, I heard the piece right
adjoining the line there was sold less than a quarter of an acre
for $1,000."

By the Court: He can state whether he is acquainted with
the value of lands in the neighborhood.

" Q. Mr. Patterson, what would you say the damage Mr. Gal-
braith has sustained by the depreciation of the value of his
farm as a whole by reason of the entering and appropriation of
the land by the Gas Company, was?"

Mr. Buffington : The question is objected to as incompetent,
the witness not having shown sufficient knowledge upon which
to base his estimate.

Mr. Patton : "Q. Are you acquainted with the value of the
land in the immediate vicinity of this piece ?  A. Why, not par-
ticularly.  Q. Are you generally?  A. Well, now, I could not
say I was down there, of land, only what I have heard.
Q. Well, you are acquainted with it that way, by what you
have heard?  A. Yes, sir.  Q. Now, will you state what the
damage was ? "

Mr. Buffington : We will renew our objection.

By the Court: We will overrule the objection, and on the
request of the defendant, exception allowed and sealed.

" A. I could not put it less than $1000, the damage to the
whole farm."

*Orr Buffington,* for appellant.—As to the competency of wit-
ness cited Michael v. Pipe Line Co., 159 Pa. 99 ; Railway Co.
v. Vance, 115 Pa. 325.

*W. D. Patton,* with him *D. L. Nulton,* for appellee.—As to

the competency of the evidence cited, Galbraith v. Phila. Co., 2 Pa. Superior Ct. 359; Orr v. Gas Co., 2 Pa. Superior Ct. 401; Railroad Co. v. Bunnell, 81 Pa. 414.

OPINION BY WICKHAM, J., July 23, 1897:

The appellant's assignments of error relate to the competency of Herman Schweitering, James Stuart and L. W. Patterson, to testify as to the damages caused to the plaintiff's land by the defendant's pipe line. No objections were made to the form of the questions put to the witnesses.

Schweitering lived about a quarter of a mile from the land affected, had been acquainted with it for thirty years, had observed the pipe line, and in a general way knew the value of lands in the neighborhood, including that owned by the plaintiff. Stuart lived about one mile from the plaintiff, had known the farm since 1867, had also observed the pipe line and had a general knowledge of the value of said lands. Patterson had known the land for over sixty years, had examined the pipe line not only from the public road but as well on the ground, and was acquainted with the general value of the lands mentioned. This witness also had personal experience with gas lines on his own farm.

Under the most recent decisions of our Supreme Court, these persons were clearly competent to testify as ordinary witnesses, and they were called only as such, not as experts: Struthers v. R. R. Co., 174 Pa. 291; Lewis v. Water Co., 176 Pa. 230. It is true that they were not particularly asked as to what they knew about the improvements on the plaintiff's land, and the effects of pipe lines on the farms. But was it necessary under the circumstances of this case to interrogate them specially in regard to these matters? Witnesses of the most ordinary intelligence, who have been acquainted with a farm in their neighborhood for twenty, thirty and sixty years, and who are not blind, may well be assumed, in the absence of any admission or intimation on their part to the contrary, to be aware of its improvements, the character of its soil and like matters; and if they have lived, as did these men, in the immediate vicinity of gas pipe lines, they can hardly be presumed to be ignorant of the effect of such lines on the lands through which they pass. If the counsel for the defense doubted that the witnesses named

had the knowledge, which their acquaintance with the plaintiff's farm for such long periods and their residence in the neighborhood, would justify the inference they possessed, he might have cross-examined them fully in regard to the matter. It would be unfair to the court below and to the plaintiff, to reverse merely on an inference that these witnesses perhaps may have been devoid of some knowledge of details which, looking at their answers to the questions asked and their environments, they could not be reasonably supposed to lack. As to their knowledge of values, the fact that it was derived from hearsay does not render it unavailable, for or against either party to the suit. A moment's reflection will show that most of the knowledge any of us have, or can have, on this subject comes from the same source. Buyers and sellers do not usually call in outsiders to aid them in their bargaining. Sales of lands, as well as prices asked and received, are generally made known to those not directly interested by the common talk of the neighborhood, in the same way that the reputations of men are established.

The very strict rule, which the appellant asks us to apply, would sometimes prevent a landowner from offering any testimony at all on the question of damages. As was said in Lewis v. Water Co., supra, a witness's examination should show "that he has some knowledge of the value of the property in that neighborhood." Having that, he should be permitted to testify, and, "the value of his opinion will be likely to depend, in the minds of the jurors, upon the extent and thoroughness of the knowledge he is shown to possess."

Judgment affirmed.