# Brennan *v.* Pittsburg & Connellsville Railroad Company, Appellant.

*Railroads — Eminent domain — Witnesses — Competency — Cross-examination—Harmless error.*

1. The fact that a witness in a land damage case may show bias, prejudice or interest will not warrant a court in refusing to hear him or in striking out his testimony, if he is fully competent to testify as to the value of land because of his general knowledge of land values in the neighborhood or his familiarity with the location, area, improvements and adaptability of the land in controversy. The credibility of such a witness is for the jury.

2. Where the qualifications of witnesses as to land damages do not depend upon the knowledge they had of the price paid by a railroad company for properties adjoining that in controversy, but on the other hand all testify to knowledge of other sales in the vicinity and to fa-

miliarity with the properties affected, the fact, developed in cross-examination, that they did have knowledge of the price paid by the company for adjoining properties will not render them incompetent.

3. The refusal to allow on cross-examination two questions to be propounded to an expert witness, relating not to the land in controversy, but to properties in another part of the borough, intended to test the accuracy of the witness's knowledge, and properly admissible, is not reversible error, where otherwise the widest latitude was given and many other questions of a somewhat similar character were asked and answered.

Mr. Justice MESTREZAT dissents.

Argued Oct. 28, 1910. Appeal, No. 169, Oct. T., 1910, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1906, No. 108, on verdict for plaintiff in case of James P. Brennan v. Pittsburg & Connellsville Railroad Company. Before BROWN, MESTREZAT, POTTER ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from award of viewers. Before FORD, J.

At the trial the jury returned a verdict for plaintiff for $53,000 upon which judgment was entered.

The court refused a new trial, FORD, J., filing the following opinion:

This is a proceeding to assess the value of certain lots or pieces of ground situate on Halket street in the first ward of the borough of Braddock, taken and appropriated by the defendant company under the right of eminent domain for the purpose of straightening, widening, enlarging and otherwise improving its line of railroad.

In October, 1905, and for some time prior thereto, the plaintiff, James P. Brennan, was the owner of three separate and distinct lots or pieces of ground, being lot No. 14, the northerly part of lot No. 16, and lots Nos. 18 and 19 in John Robinson's plan of the subdivision of section 25 in J. W. Buchanan's plan of Braddock field.

Lot No. 14 was in width forty feet on Halket street and extended in depth about 133 feet to an alley twenty feet wide, known as "Wood Alley;" the northerly part of

lot No. 16 was distant about fifty-six feet south of lot No. 14, had a width of forty feet fronting on the northeasterly side of Halket street and extended in depth about 133 feet to Wood alley; lots Nos. 18 and 19 are contiguous and situate at the corner of Halket and Thirteenth streets, together having a width of 106.88 feet on Halket street and extending to Wood alley. Lots Nos. 18 and 19 are situate about forty feet south of lot No. 16.

The part taken and appropriated by the defendant company was the westerly half, or less than half, about sixty-two to sixty-three feet of each of the three parcels of ground, together with the right, title and interest of James P. Brennan in that portion of Halket and Thirteenth streets abutting thereon, and subject to the easement of the public in said streets.

Halket street was about fifty feet wide,. having upon it the two main lines of the defendant company's railroad. The tracks extended along the street in front of and about fifteen feet from the west line of the Brennan properties. Between the Brennan properties and the railroad there was a paved side or foot walk in width about ten or twelve feet. Since 1905, the company has constructed its railroad occupying the sidewalk formerly along Halket street, and also plaintiff's land taken for that purpose.

The verdict of the jury was for the plaintiff, and the defendant moves the court for a new trial, assigning as reasons:

1. The court erred in admitting the evidence of plaintiff's witnesses, W. J. Holland, H. J. Learn, G. H. McGarey, George Weil, E. M. Brackmeyer and S. C. Richards, as to the fair market value of plaintiff's property.

2. The court erred in refusing to strike out the testimony of W. J. Holland and H. J. Learn, witnesses for the plaintiff.

3. Dr. G. H. McGarey, a witness upon behalf of the plaintiff, after having testified, in a conversation, said, "I have just been on the stand as a witness in the Brennan case and gave some pretty strong testimony, but

when it comes to testifying between an individual and a corporation, I have no conscience."

4. The verdict was against the law and the evidence and the charge of the court.

The reasons assigned will be considered in order:

1. The objections to the competency of each of the plaintiff's witnesses, W. J. Holland, H. J. Learn, G. H. McGarey, George Weil, E. M. Brackmeyer and S. C. Richards, being (a) that the witnesses did not possess such knowledge as would enable them to estimate the value of the property before and after its appropriation, and (b) their knowledge of the value of property in the vicinity of the Brennan property was of sales made and prices paid by the defendant company.

The test of the competency of a witness called to give an opinion in respect to the value of land is, that he has knowledge of the property in question, the extent and condition of the improvements and the uses to which it may be applied, taken in connection with the general selling price of lands in the neighborhood at the time.

The competency of a person to give an opinion under oath as an expert so that upon the preliminary examination he appears to have any pretensions to speak as such, rests in the discretion of the judge: Ardesco Oil Co. v. Gilson, 63 Pa. 146. The value and weight of the opinion expressed being entirely for the jury: Lewis v. Water Co., 176 Pa. 230.

In the case of Hope v. Phila. & Western R. R. Co., 211 Pa. 401, it was held:

"To render a witness competent . . . . he should have such knowledge as would enable him to estimate the market value of the entire tract of land both before and after the construction of the road through it. Adhering to this rule of competency, the witness should disclose some knowledge of the location of the land, its area, quality and productiveness, the extent and condition of the improvements, the manner in which the road passes through the premises and the value of other lands

in the neighborhood at or about the time of the appropriation of the land by the railroad company. If the witness has some familiarity with these facts, his testimony must go to the jury. The extent of his knowledge affects the weight of his testimony and not his competency."

Of the witnesses whose competency is questioned, W. J. Holland was a resident and had resided in the borough of Braddock "all his life." He is and has been engaged in the real estate and insurance business upon his own account for seven years, and theretofore as an employee of his father and uncle; G. H. McGarey is a physician, is and has been a resident of Edgewood for one year, and prior thereto had resided in the borough of Braddock, where he had practiced his profession for seventeen years and upwards; H. J. Learn is a merchant engaged in the dress goods business, his place of business and residence is in the borough of Braddock, where he had resided for sixteen years and upwards; George Weil is an attorney at law, practicing at the Allegheny county bar, and is and for a number of years has been a resident of Braddock. He was largely interested in the placing of loans secured by mortgages upon real estate in the borough. In part his duty was to examine and appraise properties offered as security, necessitating inquiry respecting the prices at which property was held and sold. Edward M. Brackmeyer was a resident of and had resided in Braddock for thirty-seven years. He is engaged in the steamship, foreign exchange, insurance and brokerage business. S. C. Richards is an architect and had resided in Braddock for sixteen years.

Each of the witnesses testified that prior to October, 1905, they knew the Brennan lots or pieces of ground, were familiar with the area of the lots, the improvements thereon, and how affected by the construction of defendant's road, had knowledge of the market value of properties and knew of sales and prices of real estate in that vicinity.

It is urged by counsel for defendant that the sales and prices testified to by certain of the witnesses were sales made to and prices paid by the defendant company.

In Pittsburg & Lake Erie R. R. Co. v. Robinson, 95 Pa. 426, cited and approved in Hope v. Phila. & Western R. R. Co., 211 Pa. 401, GORDAN, J., delivering the opinion of the court, said:

"Though his (witness's) knowledge of the value of lands in that neighborhood may have rested solely upon a few purchases made by the railroad company, and from no other purchases in the real estate market, yet he had some knowledge upon which to base an opinion and the value of that was for the jury."

We are of the opinion that these witnesses were competent to estimate the value of the Brennan lots and to express an opinion as to the difference between the value of the lots before and the value after and as affected by the appropriation of a part of the lots by the railroad company.

2. Counsel for defendant moved to strike out the testimony of W. J. Holland for the reason that he had not shown sufficient knowledge of sales or of prices paid or asked for the property in the neighborhood of and similar to the Brennan property, further, that he bases his opinion on sales made to the railroad company; and of H. J. Learn for the reason that his opinion is based on the peculiarity of the location of the land, the uses to which it could be put, and sales of property located in other parts of the borough having no bearing on the market value of the Brennan property.

Mr. Holland had knowledge of sales made about the time of the appropriation and prices paid on property in the vicinity of the Brennan property, and testified that he knew of the sales of the McCredy property, the P. J. Brennan, the Petty, the Corado, the James McCune, the John Lowe, the Catherine Lowe, the McClelland, the Costello and other properties. Mr. Learn was the owner of real estate, and in 1905, had purchased property in the

borough.   He knew of the asking and selling prices of
property in the vicinity of the Brennan property, and
referring to the time of appropriation, testified, "I am
familiar with some selling prices and have heard of some
asking prices.   That made me familiar with them."   He
knew of the Worthington and the Robinson sales, both
to the railroad company, and the prices at which other
properties were held for sale.

Mr. Holland and Mr. Learn based their opinion upon
their knowledge of values, the size and location of the
properties, the then use and the uses to which the prop-
erties were adapted.   The motion to strike out was prop-
erly refused.

3. It appears from the testimony taken and filed in
support of the rule for a new trial that on the day of the
trial, after testifying, Dr. G. H. McGarey met George C.
Watt in the corridor or hall of the courthouse.   The trial
and testimony given by Dr. McGarey was referred to and
commented upon.   A few days later Paul D. Remington
had a conversation with Dr. McGarey in which Dr. Mc-
Garey referred to his testimony.   There is a conflict in
the testimony taken on the rule in relation to what was
said by Dr. McGarey in the conversation with Mr. Watt
and with Mr. Remington.   It is not necessary to deter-
mine the language nor import of the language used by
the witness, Dr. McGarey.

Evidence which merely impeaches the credibility of a
witness cannot be successfully urged as the ground for a
new trial.

In the case of Com. v. Laird, 14 York, 128, Mr. Jus-
tice STEWART held that three witnesses testifying that
a material witness for the commonwealth had received
$10.00 for testifying was not a sufficient cause for a new
trial.

In Com. v. Yot Sing, 7 Kulp, 349, Mr. Justice RICE
refused a new trial where the principal witness made affi-
davit that he had perjured himself on the trial, and three
witnesses testified to like effect.

In Com. v. Flanagan, 7 W. & S. 415, the defendants alleged that they were entitled to a new trial because several witnesses had since the conviction of the prisoners, either admitted that they did not testify to the facts truly, or made statements inconsistent with the evidence given on the trial, and it was held that "the rule of law is that the testimony must go to the merits of the case and not be merely for the purpose of impeaching the testimony of the witnesses. For newly discovered evidence discrediting witnesses who testified on a former trial, a new trial is never granted."

The statements made by Dr. McGarey to Mr. Watt and to Mr. Remington, if made in terms as by the witnesses for the defendant testified, tended to impeach his credibility and affect the weight to be given to his opinion as to values.

4. It is contended by the defendant that the verdict of $53,000 for the plaintiff is excessive.

The defendant company filed its bond October 21, 1905, and shortly thereafter entered upon the land condemned.

There is a marked difference in the value of the property before and after the widening of the railroad between the estimates or opinions of the witnesses for the plaintiff and for the defendant. The highest value shortly before the appropriation, as given by a witness for the plaintiff, was $158,848; by a witness for the defendant, $34,430. The highest value immediately after and as affected by the appropriation, as given by a witness for the plaintiff, was $42,239; by a witness for the defendant, $15,851.

It has uniformly been held that the court will not grant a new trial because the verdict is too high when the court cannot say that in no view of the case can it be justified. We have carefully reviewed and considered the testimony. Disregarding the estimate of Dr. McGarey, the highest estimate of the depreciation upon the part of the plaintiff is that of W. J. Holland, who testified that the de-

preciation was $90,172; upon the part of the defendant, the highest estimate of the depreciation was $18,591.

The jury evidently weighed the opinions as to values of the witnesses for both the plaintiff and defendant, and ascertained the amount of the damages from a fair consideration of all the facts and circumstances in evidence. A careful review of the testimony does not convince us that the verdict of the jury should be disturbed.

Now, July 14, 1910, the motion for a new trial is discharged.

*Errors assigned* were (1–9) various rulings on evidence, quoting the bill of exceptions.

*Edward T. Noble,* with him *Johns McCleave,* for appellant, cited: Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325; Michael v. Pipe Line Co., 159 Pa. 99; Friday v. R. R. Co., 204 Pa. 405; Stevenson v. Coal Co., 201 Pa. 112; Cobb v. Boston, 112 Mass. 181; Chicago, etc., R. R. Co. v. Scott, 225 Ill. 352 (80 N. E. Repr. 404); Peoria Gaslight, etc., Co. v. Terminal Ry. Co., 146 Ill. 372 (34 N. E. Repr. 550); Henkel v. R. R. Co., 213 Pa. 485; Gorgas v. R. R. Co., 215 Pa. 501.

*Edmond Englert,* with him *Thomas M. & Rody P. Marshall,* for appellee, cited: Pittsburg, etc., R. R. Co. v. Robinson, 95 Pa. 426; Hope v. R. R. Co., 211 Pa. 401; Galbraith v. Phila. Co., 2 Pa. Superior Ct. 359; Markowitz v. R. R. Co., 216 Pa. 535.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:

This is a proceeding to assess damages for land appropriated for railroad purposes under the right of eminent domain. The lots affected belong to appellee and are located in the borough of Braddock. Buildings and improvements were erected thereon, all of which facts appear in the testimony. Most of the assignments of error raise questions as to the competency of witnesses pro-

duced by the plaintiff in the court below to testify. Holland, McGeary, Learn, Brackmeyer and Richards were objected to as witnesses on the ground that they had not shown sufficient knowledge of the market value of the properties affected by the appropriation upon which to base an opinion. After a careful examination of the testimony, the charge of the trial judge and the opinion of the learned court below refusing a new trial, we have reached the conclusion that all of the witnesses complained of were qualified to express an opinion as to the fair market value of the properties in question before and after the appropriation. The objections to these witnesses is in the nature of an attack upon their credibility and as to the value and weight of the opinions expressed by them. Such questions are for the jury and not for the court. A witness may be fully competent to testify as to the value of a lot of ground because of his general knowledge of land values in the neighborhood, or of his knowledge of the value of the lot in controversy by reason of location, area, improvements, adaptability for certain uses and other like considerations, and yet his testimony when given may show prejudice or bias to such an extent as to weaken or impair its value. A court, however, would not be warranted in refusing to hear the testimony of a competent witness, or in striking out such testimony when given, because such witness may show bias, or prejudice or interest. The credibility of the witnesses complained of in the present case and the value and weight of their testimony were for the jury: Lewis v. Water Co., 176 Pa. 230.

It is argued with much force that the witnesses complained of based their opinions of the general selling value of properties in the neighborhood upon the price paid by the appellant railroad company for adjoining properties in the same block. The rule is well established that particular sales for a particular purpose, is not evidence of general market value in the neighborhood. Our latest case on this subject is Friday v. R. R. Co., 204 Pa. 405,

and this decision is strongly relied on by appellant in the case at bar. If the facts disclosed by the record supported this contention there would be great force in the argument. We do not so read or understand the testimony. The qualification of the witnesses did not depend upon the knowledge they had of the price paid by the railroad company for adjoining properties in the same block and they did not so testify. It is true they had knowledge of the sales to the railroad company but these facts were developed on cross-examination by counsel for appellant. They did not say this was the only knowledge they had but on the other hand all testified to knowledge of other sales and showed familiarity with the properties affected by the appropriation, their size, location, improvements, adaptability for business purposes and market value. These witnesses were prominent business and professional men who had lived in Braddock for many years, some of them during their entire lives, and had familiarity with real estate transactions and knowledge of market values by reason of such experience. We think they were clearly competent under the rule announced in many cases: Pittsburg, etc., R. R. Co. v. Robinson, 95 Pa. 426; Smith v. R. R. Co., 205 Pa. 645; Hope v. R. R. Co., 211 Pa. 401; Lally v. R. R. Co., 215 Pa. 436; Markowitz v. R. R. Co., 216 Pa. 535; White v. R. R. Co., 222 Pa. 534.

The sixth and seventh assignments relate to the refusal of the trial judge to permit certain questions on the cross-examination of the witness, Weil. This witness had lived in the neighborhood all of his life, is an attorney at law, and for many years had been interested in placing mortgages on Braddock real estate. He was subjected to a very searching cross-examination on every phase of the case and among other things was asked what kind of improvements were on a particular property upon which he had placed a mortgage. The question was objected to as incompetent and the objection was sustained. The same witness testified that he had placed a mortgage

on another property in 1903 or 1904 and was asked on cross-examination what he considered the fair market value of the mortgaged property at that time. The court sustained the objection to this question but said, "the witness may show what he knows concerning the sale of the property, if it was sold, or if he made inquiries from the owner with respect to value, he may so state." The witness then proceeded to state how he ascertained the value of the property but when asked the amount of the mortgage he placed on it, on objection he was not permitted to answer. These questions had no reference to the lots of appellee appropriated by the railroad company but related to properties in another part of the borough. They were intended to test the accuracy of the knowledge of the witness and for this purpose might have been very properly allowed although the inquiry was remote to the cause on trial and not material to the issue involved. However, in cases of this character very wide latitude should be given on cross-examination in order to test the value and weight of such testimony. In the present case the widest latitude was given and in the only two instances complained of, the testimony refused could not possibly have done appellant any harm in view of the many other questions of a somewhat similar character asked and answered. The refusal to allow these two questions relating to remote subjects certainly does not constitute reversible error.

The case was exceptionally well tried and the learned court below gave such cogent and convincing reasons to support every position taken in the opinion refusing a new trial that we could very properly have rested our decision on those reasons.

Assignments of error overruled and judgment affirmed.

Mestrezat, J., dissents.