## Gumbert & Huey, Plffs. in Err., v. Watson Kilgore.

Where the surface is owned by one person and the coal underneath by another, the owner of the surface has a right to actual support for his soil, and the owner of the coal has a right to take out the coal in any way he pleases, so that he supports the surface in its ancient condition.

The owner of the underlying coal is bound to sustain the surface in its natural condition, and if an ordinary house is put upon the ground by the owner of the surface and injury occurs to it by reason of the owner of the coal not so supporting the surface, the owner of the coal is liable for damages.

The owner of the coal is liable to the owner of the surface if a spring is ruined through failure of the former to properly support the surface, but not when the injury to the spring is caused by mining operations where the surface is supported in its natural condition.

(Decided November 15, 1886.)

October Term, 1886, No. 15, W. D. Error to the Common Pleas, No. 1, of Allegheny County to review a judgment on a verdict for plaintiff for $500, in an action on the case to recover damages to property through alleged negligence in mining coal. Affirmed.

---

NOTE.—The owner of the surface has the absolute right to support, and may recover if interfered with, negligently, intentionally, or otherwise (Robertson v. Youghiogheny River Coal Co. 172 Pa. 566, 33 Atl. 706; Lowry v. Hay, 2 Walk. [Pa.] 239); unless the parties have contracted for a different rule (Williams v. Hay, 120 Pa. 485, 6 Am. St. Rep. 719, 14 Atl. 379; Scranton v. Phillips, 94 Pa. 15).

"The extraction of minerals from the earth is a reasonable use of the property, and if, because of mining operations, percolating waters are drawn away so as to destroy springs and wells, there is no right of action. And where the title to the surface and that to the minerals is distinct, the owner of the minerals has the right to use all the waters found percolating therein, although the effect is to cut off the supply of water to the surface springs." Farnham, Waters, p. 2721.

The same author, at page 2722, in speaking of injury to springs by removal of surface supports, says: "But where the surface and the mine belong to different persons, the owner of the mine has no right to carry on his operations in such a way as to remove the surface support, so that, if he does so, and a spring is destroyed as a result of the wrongful act, he is liable."

The action was brought by Watson Kilgore against William Huey, Robert Gumbert, and others, partners, doing business as Gumbert & Huey.

The following facts appeared on the trial in the court below, before COLLIER, J.:

In 1859, Alexander McClure, Sr., owning two farms containing together about 244 acres of land, sold all coal underlying the same to Farrow, Gumbert & Company, of whom the defendants are the successors, by an agreement in writing which provided that said McClure "sells and agrees to convey to said Farrow, Gumbert & Company, their heirs and assigns, all the coal, except as hereinafter excepted, situated in and under the surface of all that tract of land . . . together with all the necessary rights and privileges of mining and taking away the same, by use of entries, drifts, and courses for air and drainage, and air holes, pit mouths, places for the deposit of slack and slate, and right of way for railroads over surface at the crossing of ravines, but no right for hauling over the surface of the inclosed land with teams or otherwise than when necessary in crossing the ravine with pit cars in the usual way; and the said McClure also grants the privilege of forever hereafter running other coal from other lands through the entries and railways made and used in taking out the coal herein above granted; and the said McClure further grants the privilege of driving and keeping open two entries through the coal in the 3-acre lot of land by him purchased of Witherow, adjoining the coal above granted; said entries, however, to pass below the log house now on said 3-acre lot. . . . If the running of the entries through the 3-acre lot above mentioned shall drain the springs thereon, the said Farrow, Gumbert & Company are to pay $100 to said McClure for the loss, in addition to the purchase money hereinafter mentioned; and the said Farrow, Gumbert & Company, in consideration of the foregoing, bind themselves to pay the said McClure, his executors, administrators, or assigns, the sum of $22,-500 in manner following, etc. . . ."

Alexander McClure having died, his administrator in 1866, by order of the court, made and delivered to Farrow, Gumbert & Company a deed for the coal in pursuance of the agreement, and the coal was mined by the latter firm and their successors, the defendants, for a number of years, in the usual manner of mining coal: namely, by taking out all the coal that can be re-

moved.   Pillars and ribs were left for the support of entrances and rooms, but as the coal was worked out the pillars and ribs were removed and the entrances and rooms were abandoned.

In 1872 William A. McClure, one of the heirs of Alexander McClure, deceased, deeded to Watson Kilgore, the plaintiff, 14 acres of one of the above-named farms, reserving and retaining to Farrow, Gumbert & Company all the rights and privileges in regard to the coal.   In 1872 Kilgore built a house on the land so purchased by him.   In 1883 the defendants mined the coal under his land and he brought this action to recover damages for injury to his house and land and loss of springs from such mining.   The plaintiff presented the following points:

1.  If the jury believe from the testimony that the defendants dug and removed the coal beneath the plaintiff's grounds, and by reason thereof the surface of plaintiff's grounds sunk, subsided, fell, and caved in, causing damages to the surface of plaintiff's grounds, and the buildings and fences thereon, they should find a verdict for the plaintiff in such damages as they believe from the testimony the plaintiff has sustained.

2.  If the jury believe from the testimony that the defendants, in removing the coal underlying the grounds of the plaintiff, did not leave sufficient ribs, pillars, or other support, sufficient in number and strength to support the surface of the plaintiff's grounds, and in consequence thereof the surface of plaintiff's grounds sunk, subsided, cracked, and caved in, causing damages to the plaintiff's grounds, springs, house, and fences thereon, their verdict should be for the plaintiff in such damages as they believe from the testimony the plaintiff has sustained by reason of such sinking, subsidence, caving, and falling in of plaintiff's grounds.

3.  That under the conveyance of the coal by deed of A. McClure's administrator to Farrow, Gumbert & Company, severing the coal strata from the surface, it is incumbent on the owners of said coal in the digging, mining, and removing of the same to leave ribs, pillars, or dirt or other support sufficient in number and strength to support the surface grounds.

4.  That the plaintiff, under his title as offered in evidence, is entitled to vertical support in the maintenance of sufficient ribs, pillars, or other support by the owners of the coal in the digging, mining, and taking away of the same.

By the Court:   In so far as the foregoing points are affirmed

in the general charge, they are affirmed, and in so far as they are denied by the general charge they are refused.

The defendants, *inter alia,* presented the following points:

1. That the agreement between Alexander McClure, Sr., and Farrow, Gumbert & Company, dated the 30th day of June, 1859, and the deed made in pursuance thereof by the administrator of said McClure, vested in said Farrow, Gumbert & Company, and the defendants, their vendees, all the coal under the lands described in the deed (including plaintiff's land), together with the full and exclusive right to mine and remove all of said coal, and the right to make and maintain openings, entries, drains, and air courses, through and under said land wherever necessary for the removal of said coal and for air and drainage, and neither the said McClure, nor anyone claiming under him, can have any right of action against the defendants for the removal of said coal in a lawful and proper manner.

*Ans.* Refused.

2. That the conveyance of the coal by McClure, Sr., under which the defendants removed the coal from under plaintiff's land, authorized them to remove all of the coal without regard to the subsidence of the overlying surface.

*Ans.* Refused.

5. That there is no evidence in the case to warrant the jury in finding any damages for the loss of springs.

*Ans.* Refused.

The court charged the jury as follows:

This is an action to recover damages for the injury to the land of the plaintiff caused by the alleged negligence of the defendants. The negligence alleged consists in the allegation that the defendants, owning the coal below the surface of the plaintiff, neglected to give a proper support to the surface; and, to determine whether there was negligence, we will have to define the rights of the plaintiff as to his land and the rights of the defendants as to their coal. Each has well-defined rights under the law, and those rights have been definitely settled by the supreme court.

The plaintiff has a right to have actual support for his soil. The owners of the coal have a right to take out the coal any way they please, so that they support the surface. The plaintiff's right is very tersely stated in the last case on this subject decided

by the supreme court. It is in these words: "The surface owner is entitled to actual support for his land at the hands of the owner of the mine underneath it."

The owner of the surface has a right to demand of the mine owner that when he takes out his coal, although he may take it out as clean as he wishes, every inch of it if he sees proper, he must, in some way, put up supports that will keep the surface at its ancient and ordinary condition and level.

Now, what was the duty of the mine owner? It necessarily follows, from the right of the plaintiff to have his surface protected and sustained, that the defendants' duty was to support it; and if the defendants did not do that they were guilty of negligence, and whatever damages resulted, in your opinion, from the evidence, the plaintiff would be entitled to recover.

Now, gentlemen, with this explanation of the right of the plaintiff on the one side, and the duty and rights of the defendants on the other, we come to a more careful consideration of the case:

The plaintiff alleges that by reason of the defendants not putting proper supports underneath to the surface that there was a subsidence, a caving in, and that he is damaged in three particular ways: first, that his house is injured; second, his springs are ruined; and third, his ground is injured. Upon all these questions there is some dispute.

We will first take the house. As I have said to you, it was the duty of the mine owners to support the surface as it was in its ancient condition, as it was before there was any house there. That is their duty, and it is no more than that. It is not their duty, if a person gets possession of the surface after they have bought their right, and chooses to build an enormous building there; nor would it be reasonable or law that they should, at immense expense, build great walls or things of that kind to sustain the surface; but they are bound to support it in its natural condition, and, if supported in its natural condition, the house would not have got out of plumb, would not have been injured, then they are liable for damages. [They are bound to sustain it in its natural condition, and if an ordinary house was put upon it by the owner of the surface and by reason of their not supporting the surface to that condition injury occurred, they are liable for damages.] That is the first question.

The defendants offer proof for your consideration that not

only was it supported strong enough to hold the surface as it was before the house was built but a great deal stronger.   They have described how it was done, and deny there was any damage, and say that if there was any giving away there it was not because they did not do their duty; it was not because they did not put in sufficient support to sustain it.   In other words, if the house was not there, they say the supports would have held the land in its natural, ancient condition.

The damage to the house must arise because you think the defendants were negligent and did not provide sufficient support to sustain the soil as it was before the house was built.   If you find that in favor of the plaintiff, whatever damage he has sustained you will allow.   But if you find as claimed by the defendants, then there could be no damage for that.

The next contest is as to the spring.   The declaration says "springs" but there is only one of any importance.   The plaintiff contends that by reason of their not sustaining the surface his spring is injured.

It is well settled, as you have heard, that when a mine owner mines his coal it is his duty to support the surface, to keep the ground above solid and safe, as it was before, and if the springs go away he cannot be held in damages.   But the plaintiff alleges that was not the cause of the loss of the spring.   He contends that it was because they did not support the surface; that if they had supported it properly and it had not sunk, that the spring was in the strata above and would not have disappeared; that it was owing to the subsidence of the soil itself.

On behalf of the defendants, counsel asks me to say "that there is no evidence in the case to warrant the jury in finding any damages for the loss of springs."   I cannot say that.   The evidence strikes me as stronger on his side than on the other, but that is for you.   If the failure to support the surface properly caused the spring to go away, the plaintiff would be entitled to damages for it; but if, through the ordinary mining they did there—ordinary or otherwise—the spring went away, he could not have any damages for it.

Then, gentlemen, the last claim is for the injury to the soil. Upon that you have heard the evidence on both sides.   You have heard that there was a subsidence there, a giving way owing to not properly supporting it.   Whatever damage that has caused the plaintiff, and will cause him, he is entitled to and ought to

have; and any other damages you find from the evidence on the other points, if you find them in his favor, he is entitled to.   He is not entitled to fancy damages, but to such as he really sustained; and what that is is for you to say from the evidence.

Now, gentlemen, as I said before, it is immaterial, so far as the support of the ground is concerned, whether the defendants worked their mine in the best manner in the world.   They must put in pillars or supports to sustain the ground in its usual and ordinary condition—its ancient condition—as is said by the supreme court: "The only reasonable support is that which will protect the surface from subsidence and keep it securely at its ancient and natural level."

The points of the plaintiff I have answered sufficiently in my charge.   The points of the defendants I will read to you.   (The court here read and answered defendants' points.)

You take the case.   Inquire first as to the house.   If it was damaged, and if that damage resulted from the negligence of the defendants in not properly protecting the surface, and not because of the extra weight of the house upon it, you give damages for that.   So with the spring.   If the loss of the spring was caused by the carelessness of the defendants in not supporting the surface, and if they had supported it the spring would still be there, the plaintiff would be entitled to damages for that.   So as to the land.   There is some damage there, I think, undisputed; however, that is for you—whatever that is, you allow.

The jury returned a verdict for plaintiff for $500 ($100 of which plaintiff subsequently remitted), and judgment was entered thereon.

The assignments of error specified the answers to the points given above and the portion of the charge inclosed in brackets.

*Levi Bird Duff,* for plaintiffs in error.—Defendants had a right to mine and remove all coal without regard to the subsidence of the overlying surface.   Rowbotham v. Wilson, 8 H. L. Cas. 348; Buccleuch v. Wakefield, L. R. 4 H. L. 377; Aspden v. Seddon, L. R. 10 Ch. 394; Dixon v. White, L. R. 8 App. Cas. 833; Scranton v Phillips, 94 Pa. 15.

Whatever duty or support the subjacent coal owes to the surface was fixed at the time of the grant and could not be enlarged afterwards.   Kilgore, having built his house with full knowl-

edge of defendants' rights, cannot claim damages for injury to it. Goddard, Easements, title, *Support,* pp. 410, 411; Marvin v. Brewster Iron Min. Co. 55 N. Y. 538, 14 Am. Rep. 322; Gilmore v. Driscoll, 122 Mass. 199, 23 Am. Rep. 312.

There was no evidence of malice in this case, and therefore there could be no recovery for the loss of springs. Chadwick v. Coleman, 80 Pa. 81, 21 Am. Rep. 93.

*Henry T. Watson,* for defendant in error.—The right of the owner of the surface to vertical support is settled by the case of Coleman v. Chadwick, 80 Pa. 81, 21 Am. Rep. 93.

PER CURIAM:

Having with care examined the rulings and charge of the learned judge of the court below, and finding them entirely consonant with the rulings of this court, we adopt them as a sound exposition of the law, and, as a legitimate sequence, affirm the judgment.