Day, J.
In the case of Ohio Collieries Company v. Elizabeth Cocke the errors complained of in this record are six in number:
“(1) Error of the trial court in not separating and definitely stating the issues.
“(2) Error of the trial court in stating 'to the jury that a certain controverted fact had been proved.
“(3) Error of the trial court in charging the jury on the law of negligence.
“(4) Error of the trial court in charging the jury as to the measure of damages in subsidence cases.
“ (5) The excessive and unwarranted verdict not supported by the evidence, and due to the erroneous charge of the court.
“ (6) Error of the Court of Appeals in affirming the'judgment of the court of common pleas.”
As to the first ground of alleged error it is undoubtedly the rule of law in Ohio that it is the duty of the trial judge to separately and definitely state to the jury the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require. B. & O. Rd. Co. v. Lockwood, 72 Ohio St., 586, 74 N. E., 1071.
An examination of this charge discloses that the trial court substantially met this requirement. There were a number of minor issues between these parties, to-wit, the ownership of the land by the plaintiff, which was not more than formally denied by defendant, and the defendant substantially ad *244 mitted that it mined the eoal from under plaintiff’s premises, but claimed to have conducted its mining operations in the usual and ordinary way and by the usual and ordinary methods employed in such mining. The paramount issues of the case were whether or not the subsidence of plaintiff’s land and the incidental damages thereto had been occasioned by the manner in which the defendant conducted its operations, and, if such injury had been occasioned by the manner in which the defendant mined its coal, what damages did the plaintiff sustain in the premises by reason thereof, and what was the proper measure of damages? We think these paramount issues of fact between the parties were- fully set forth in the charge of the court, and that no prejudicial error intervened in not separating and more definitely stating the issues between the parties. The frequent use in the charge of the court of such expressions “as set out in the petition,” “as set out in this petition,’’ “as set out in her petition,” and other like allusions, did not, in our opinion, leave to the jury the duty of groping through the technical words of the pleadings to ascertain the matters of fact therein referred to, and, when taken in conjunction with the charge as a whole, we think the court stated the issues with sufficient definiteness to advise the jury what issues of fact they were to pass upon, and that no prejudicial error intervened in that regard.
The second error complained of is that the trial court told the jury that a certain controverted fact had been proved. In this regard the defendant claims that the petition alleged that the defendant was the owner of the coal, which allegation was de *245 nied in the answer, thus raising an issue of fact as to who was in truth the owner of the coal; the portion of the charge complained of being that wherein the court states:
“It is clear by the evidence that the defendants here own this coal.”
We do not believe that the defendant was prejudiced by this statement of the court, because, so far as the issues in this case are concerned, as the court in his charge says, the ownership by the defendant of the coal is not a matter of importance, it being practically conceded, although technically denied. The real issue in the case was what damages, if any, were due (the plaintiff by reason of the injury resulting to plaintiff because of the removal of that coal. Now, the trial court said that—
“The defendant * * * had the right to operate there, had the right )to remove all the coal from under the land; * * * but, while it had the right to remove this coal from under this land, it must exercise that right keeping in -mind the fact (that other persons own stratas of the surface above its coal land, and that they owe to those persons * # * the duty of seeing that their stratas are not destroyed by reason of their mining operations or their removal of coal.”
Plaintiff in error who was defendant below, claims that it was a question for the jury to say whether or not it owned the coal; but, in view of the fact that the ownership of the coal was not really a matter of as great importance in the case as the mining and removal thereof, we do not believe that prejudicial error intervened by the court saying thalt “it is clear by the evidence that the defendants here own this *246 coal, ’ ’ especially as we fail to find any testimony in the record offered by defendant upon that subject. The jury were bound to find for (the plaintiff upon that issue. Hence we decline to disturb this judgment upon that ground.
The third claimed error is in the charge of the court on the law of negligence.
Now, it cannot be denied that this was an acftion for damages sounding in tort, even though the owner of the surface has a right to its support in its natural condition, regardless of negligence in the mining. The petition of the plaintiff averred that—
“Defendant, in its said operation of the said coal from under plaintiff’s said lands, knowingly, willfully, wantonly, wrongfully, carelessly, and improperly conducted its said mining operations on plaintiff’s said lands in this, to-wit: That, after all the coal was mined except thait necessary for the support of the surface thereof as aforesaid, the defendant negligently, intentionally, and improperly removed all the pillars, ribs, stumps and supports for the surface of the same. That the defendant so excavated ithe earth and improperly removed said pillars,” etc.
The answer of defendant denied that “it wantonly, wrongfully, improperly, or negligently mined and removed the pillars,” etc.
Thus, the issue of negligence being squarely tendered by the pleadings, it was not improper for the court to adopt ¡the language of the pleadings and refer to the acts complained of by the terms employed by the parties themselves.
The definition of negligence given in 2 Cooley on Torts (3d Ed.), 1324, 1325, star page 752, is:
*247 “The failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.”
It was clearly the privilege of this coal company to remove the coal under the plaintiff’s land, but it was likewise equally its duty to remove that coal in such a manner as not to injure the property of the plaintiff; and, if there was a failure to observe that degree of care, precaution, and vigilance which the circumstances justly demanded, whereby the plaintiff suffered injury, such failure was in that sense a negligent act. The term as employed by the trial court in his charge, in the light of his instructions as to the privileges of both the plaintiff and the defendant in the premises, did not, in our judgment, work prejudicial error to the defendant below, and a reversal upon that ground must be denied.
The fourth ground of alleged error is that the trial court erred in charging the jury as to the measure of damages. The portion of the charge complained of is in the following language:
“There are two rules for the measurement of damages in cases of this character, and, in order to determine which rule you will apply on the measurement of your damages, you will have to determine from the evidence, first, whether or not the injury is permanent in character, or whether or not it is susceptible of repair and restoration.
“If the injury is permanent in character, not susceptible of repair or of being restored, the measure of damage, the court says to you, is the difference between the value of the property in February, 1917, *248 and its value at the present time. If the property is susceptible and capable of being restored, the court says to you that the measure of damages that the plaintiff is entitled to recover is the cost of restoring the property, the cost of restoration plus the loss of the rents for such reasonable time as is necessary to restore the property. So you ascertain, then, from the evidence first on the question, Is the property capable of being restored to its original condition — thalt is, the condition it was in in 1917?
“Now, there is another limitation to be considered in that connection, and that is this: If the cost of restoration would be more than the value of the property you will nolt apply that rule. If the cost of restoration is less than the value of the property, and the property is capable of being restored to the condition it was in 1917 — that is, at a less cost than the value of the property — then you apply the latter rule, but if not, if it is not capable of being restored, or if it cannot be restored at a less figure than the value of the property, you apply the other rule, the difference beltween its value in 1917 and its value now, as disclosed by the evidence. ’ ’
The rule as to the measure of damages in subsidence cases may be stated as follows:
If the injury is of a permanent or irreparable nature, the measure of damages is the difference in the market value of the property as a whole, including the improvements thereon, before and after the injury. If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration,^unless such cost of restora *249 tion exceeds the difference in ithe market value of the property before and after the injury, in which case the difference in market value becomes the measure.
Now, the trial court gave this rule in his charge until he came to the qualifying language, “unless such cost of restoration exceeds the difference in the markelt value of the property before and after the injury, in which case the difference in market value becomes the measure.” Now, it is admitted by the plaintiff in error that, if the court had used the words “difference in value,” instead of “value of property,” the rule would have been correctly stated. No one claimed there was a total destruction of the land, and the recovery could not be to the extent of the entire value thereof.
“Whatever the nature of the injury, the damages cannot equal the entire value of the land. ’ ’ 3 Sedgwick on Damages (9th Ed., 1922), Section 932.
The evidence showed that this property was still being used by plaintiff and her son; hence it was not totally destroyed, nor the entire value taken. To say that the court’s charge, by use of the word “value” without coupling the word “difference,” carried the idea of total destruction, or entire value, disregards the evidence and the issues in the case. As was said by the court in its charge:
“You are only to allow the plaintiff what is due in compensatory damages what you are able to say the evidence shows she has sustained, which is damage in such an amount of money as will make the plaintiff whole.”
*250 And, again:
“What you restore to the plaintiff is the amount of the plaintiff’s loss, nothing more and nothing less.”
This language could not be construed to mean an allowance for the full value of the farm, as if there was a total destruction. There is evidence in the case to substantiate the verdict, upon either theory of damages, under the true and correct rule, that is, difference in value before and after permanent injury, or, if reparable, cost of repair plus value of loss of use, unless greater than difference in value before and after the injury.
The verdict was $2,595.83, and there was evidence showing difference in value before and after the injury, ranging from $200 up to $4,500, so that the verdict might have been returned upon either theory of the measure of damages, and still have been within the correct rule of damages in this class of cases.
That portion of the charge containing the limitation or qualification, while not free from criticism, was not prejudicially erroneous when taken in the light of the evidence and in conjunction with the entire charge.
“Where an instruction which is open to criticism has been given by a trial court to a jury and the record discloses that the instruction could not have resulted in prejudice to the complaining party, it is error for a reviewing court to reverse the judgment of the trial court upon that ground.” Haas v. Kundtz, 94 Ohio St., 238, 113 N. E., 826.
Giving an erroneous charge which is not prejudicial to the party complaining thereof is not reversi *251 ble error. Mahoning Valley Ry. Co. v. Harnett, 83 Ohio St., 480, 94 N. E., 1110.
As to the fifth ground of claimed error, that the excessive and unwarranted verdict was not supported by ithe evidence, and due to the erroneous charge of the court, we are confronted by the rule that we are not permitted to weigh the evidence; but it is sufficient for us to say that we find in this record some evidence to support the verdict. Not having found any prejudicial error in the charge, we therefore cannot disturb the judgment of the court below upon this fifth ground of error.
The sixth ground is of general character, relating to the Court of Appeals affirming the judgment of the common pleas court.
What has been said as to the charge of the court in considering the fifth ground of error applies to the sixth. The judgment of affirmance being based upon the acceptance by plaintiff of a remittitur of $795.83, we are of opinion that the plaintiff in error has not been prejudiced by such affirmance.
In the case, National Coal Company v. Goffee, the questions presented are:
First. WTiether there can be a recovery for damages for subsidence of surface of land, if the instrument-which conveys the coal thereunder does so with the right to mine and remove the same at will. Does this language amount to a waiver, either expressly or by implication, of the right of damages for subsidence of surface?
Second. Whether there may be a recovery for injury to buildings which have been erected after the conveyance of the coal, such injury being due to the subsidence of the surface.
*252 Third. Whether there can be a recovery for a loss of springs or wells fed by percolating water, loss of which is claimed to be dne to subsidence of surface.
The right of subjacent support of the surface in its natural state is a right the owner has regardless of whether the mining operations are conducted in a proper manner or not.
“Whenever there has been a separation in ownership of the mines beneath the surface from the surface, the owner of the latter, in the absence of an agreement' to the contrary, has an absolute right to have the surface supported precisely as it was in its natural state. ‘If the owner of the coal undertakes to mine and remove it — as he has an undoubted right to do — and damage results to the surface, either (1) from negligence in conducting his mining operations or (2) from failure to properly and sufficiently support the surface, or (3) from both of these causes combined, the surface owner is entitled to recover compensation for such injury as lie may show he has sustained.’ ” Jones on Easements, Section 597; Pringle v. Vesta Coal Co., 172 Pa., 438, 442, 33 Atl., 690; 41 L. R. A. (N. S.), 236, 237, note and collected authorities; 68 L. R. A., 675, 692; 2 Cooley on Torts (3d Ed.), 1239; Humphries v. Brogden, 12 Q. B., 738, 116 Eng. Rep. R., 1048; Noonan v. Pardee, 200 Pa., 474, 50 Atl., 255, 55 L. R. A., 410, 86 Am. St. Rep., 722.
In Ohio the right to damages for injuries to surface, in cases of this character, has been established in the case of Burgner v. Humphrey, 41 Ohio St., 340, where in the first proposition of the syllabus it is held:
*253 “If the owner of land grants a lease whereby he conveys all the underlying mineral coal, with the right to mine and remove the same, the lessee will not be entitled to remove the whole of the coal without leaving support sufficient to maintain the surface in its natural state, unless the language of the instrument clearly imports that it was the intention of the lessor to part with the right of subjacent support.”
While the plaintiff in error practically concedes in the brief of counsel the correctness of the foregoing rule, it is claimed that the conveyance of all the coal with the right to mine at will is a grant that' impliedly carries with it immunity from damages for injuries to the surface. We think the rule announced in Burgner v. Humphrey, supra, must prevail, and the intention of the party to part with the right of subjacent support must be shown by express grant, or be clearly imported in the instrument conveying the estate.
The court, at page 352 of the opinion in the Burgner case, says:
“It seems to be well settled, that when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantee will be entitled only to so much of the minerals, as he can get without injury to the superincumbent soil, unless, the language of the instrument clearly imports, that it was the intention of the grantor to part with the right of subjacent support. Humphries v. Brogden, 1 E. L. & Eq., 241; Davis v. Treharne, 6 Law. Rep., 460 (H. L. Appeal Cases, 1881); Coleman v. Chadwick, 80 Pa. St., 81; Jones v. Wagner, 66 Id., 429; Harris v. Ryding, 5 Mee. & W. 60; Zinc Co. v. Franklinite Co., 13 *254 N. J. Eq., 322, 342; Smart v. Morton, 5 Ell. & Bl., 30. The owner has a natural right to the use of his land, in the situation in which it was placed by nature, and if the surface of the land and the minerals beneath belong to different owners, the owner of the surface is entitled to have it supported by the underlying mineral strata, and, an action may be maintained against the owner of the minerals, for the damages sustained by the subsidence. Each owner must so use his own, as not to injure the property of the other. The subjacent support should be such as will preserve the integrity of the surface.”
“But a sale of all the coal under a tract of land is not in terms or by necessary implication a release of the right to surface support, any more than the sale of the first story of a building, two or more stories in height, would be a release of the floor so sold from its visible servitude to the remainder of the building. The release must be in either case by express words or by necessary implication.” Jones on Easements, Section 599; Collins v. Gleason Coal Co., 140 Iowa, 114, 115 N. W., 497, 118 N. W., 36, 18 L. R. A. (N. S.), 736.
The case of Walsh v. Kansas Fuel Co., 91 Kan., 310, 137 Pac., 941, 50 L. R. A. (N. S.), 686, contains a collection of authorities to the same effect. See, also, 68 L. R. A., 675, and 41 L. R. A. (N. S.), 236.
The next inquiry presents the question of damages to the buildings by loss of subjacent support.
The rule is well settled in this country that in damages to buildings for removal of lateral support some act of malice or negligence must be shown. (Keating v. City of Cincinnati, 38 Ohio St., 141, 149, 43 Am. Rep., 423, and City of Cincinnati v. Penny, 21 *255 Ohio St., 499, 8 Am. Rep., 73.) And it is claimed by the plaintiff in error that the same rule applies to subjacent support as well. We think that the authorities make a distinction between the damages that may be recovered for loss of lateral support and those recoverable for loss of subjacent support, and in 27 Cyc., at page 787, it is said:
“The owner of land carrying on mining operations and depriving an adjoining owner of lateral support is liable for injuries to the land thereby occasioned ; but he is not liable for injuries to buildings placed on the land in the absence of proof of negligence, the support to which a landowner is entitled from the adjacent land being confined to such an extent of adjacent land as in its natural undisturbed state is sufficient to afford the requisite support, and the measure of damage is confined to the actual damage done to the land itself. But, on the other hand, it has been held that, when the working of mines has occasioned the subsidence of the land of another, damages may be recovered in respect of the injury to buildings thereon provided their weight did not occasion or contribute to the subsidence.”
This distinction is also noted in the case of Noonan v. Pardee, 200 Pa., 474, at page 488, 50 Atl., 255, at page 258 (55 L. R. A., 410, 86 Am. St. Rep., 722):
“Damage for failure to furnish vertical support to the surface in mining underneath is a well-known cause of injury to the surface owner; but, that an adjacent owner has, by removing lateral support, caused a vertical subsidence of the surface, is an altogether different averment of the ground of complaint. He may be the same, or some other than the operator of the mine underneath. His duty is *256 not in all respects the same; the rule for the computation of damages is not the same.”
In Bigelow on Torts (8th Ed.), p. 437, the rule has been well stated as follows:
“The support required, in the absence of grant or prescription, appears, however, to be merely a reasonable support. Whether the owner of the upper tenement could require the owner or occupant of the lower to support structures of extraordinary weight is doubtful. The true view seems to be that when the owner of the whole property severs it by a conveyance either of the surface, reserving the mines, or of the mines, reserving the surface, he intends, unless the contrary be made to appear by plain words, that the land shall be supported, not merely in its original condition, but in a condition suitable to any of the ordinary uses necessary or incidental to its reasonable enjoyment.”
Also in Wood on Nuisances (3d Ed.), Section 199:
“The mere presence of a building or other structure upon the surface does not prevent a recovery for injuries to the surface, unless it be shown that the subsidence would not have occurred except for the presence of the buildings. Where the injury would have resulted from the act if no buildings existed upon the surface, the act of creating the subsidence is wrongful, and renders the owners of the mines liable for all damages that result therefrom, as well to the buildings as to the land itself.”
If we concede for the sake of the argument that negligence must be shown, the act of the owner of the coal in removing all support from the superin *257 cumbent soil is prima facie the cause of the subsequent subsidence of the soil, and the burden is upon such party to show that it would not have subsided but for the additional weight of the building erected subsequent to the lease or sale of the coal.
“'While it is doubtless true the party owning the minerals under the land of another, or having a lease to remove the same, is only bound to leave support for the superincumbent soil in its natural state, and is not required to leave support for additional buildings erected on the surface, yet the mere presence of a building or other structure upon the surface will not prevent a recovery for injuries to the surface, unless it is shown that the subsidence would not have occurred from the act, if no buildings existed upon the surface. The act creating the subsidence is wrongful, and renders the owners of the mine liable for all damages that result therefrom, as well to the buildings as to the land.
‘ ‘ The act of removing all support from the super-incumbent soil is prima facie the cause of its subsequently subsiding; but if the subsidence is in fact caused by the weight of buildings erected on the surface after the execution of a lease to the defendant, authorizing him to take the mineral beneath the surface, that may be shown in defense as contributive negligence. ’ ’ Wilms v. Jess, 94 Ill., 464, 465 (34 Am. Rep., 242), and Jackson Hill Coal & Coke Co. v. Bales, 183 Ind., 276, 108 N. E., 962.
The announcement of the above rule is not wholly necessary for a decision of the question presented in the instant case. For there was a special finding of the jury upon the subject to the effect that defend *258 ant was negligent in the premises. The special finding of fact thereon was in response to the following interrogatory: Was the defendant negligent in conducting mining operations under the property of the plaintiff, and, if so, in what respects? To which the jury replied: Failure of defendant to leave sufficient support or proper pillars or support. This is tantamount to finding that the defendant was negligent, and that such negligence consisted in not leaving sufficient pillars, or support, such as prudent and careful mining required. The instructions of the court in this regard were substantially correct, and, taking the charge as a whole upon this subject of damages to buildings, we fail to find any prejudicial error therein.
The third point raised is as to damages for loss of the well or spring. As between -adjacent owners, the xule of law seems to be that there is no right to recover for damages for loss of springs or wells fed by percolating waiter, and that, unless there is injury or damages to a subterranean stream or water in a known and fixed course and well defined channel, there can be no recovery. (Elster v. City of Springfield, 49 Ohio St., 82, 30 N. E., 274, and Frazier v. Brown, 12 Ohio St., 294.) But for loss of springs or wells, due to loss of subjacent support by removing underlying coal so that there is a subsidence of the surface, there can be a recovery; the measure of damages being the difference in value of the land as a whole before and after the subsidence, the loss of the springs or well being considered as an element going to make up the value of the land as a whole. Rabe v. Shoenberger Coal Co., 213 Pa., 252, 62 Atl., 854, 3 L. R. A. (N. S.), 782, 5 Ann. Cas., 216; Hoff *259 man v. Berwind-White Coal Mining Po., 265 Pa., 476, 109 Atl., 234; 3 Farnham on Waters and Water Eights, Section 939; Gumbert v. Kilgore (Pa.), 6 Atl., 771; Stonegap Colliery Co. v. Hamilton, 119 Va., 271, 89 S. E., 305, 312, 313, Ann. Cas., 1917E, 60.
In the cases cited in the brief of plaintiff in error a clear line of distinction is to be drawn between those where the loss of spring or well is due to subsidence of surface on account of withdrawal of proper subjacent support and those where loss of percolating water is due simply to removal of coal. The cases relied upon by plaintiff in error are the cases that refer to loss of percolating water on account of removal of coal. In the latter class of cases there can be no recovery, but in the former, where loss of water is due to subsidence of the surface on account of the removal of pillars, etc., we think there can be a recovery if the proof so shows.
This distinction is well made in the charge of the common pleas court, in the case of Wills Creek Coal Co. v. Stage, 77 Ohio St., 643, 84 N. E., 1135, the judgment in which case was affirmed by this court without report. Among other things the court in that charge said:
“Now, as to the item of damages that the plaintiff claims with respect to the well of water, I have an instruction to give you. If you find that the defendant in mining out that coal, reasonably and in a proper manner, and to a reasonable and proper extent, and without intending to do so, in the coal tapped the sources of water in that well, and destroyed and diverted the same, then the company is not liable for the destruction of the well. That is *260 a thing that the company conld not anticipate or avoid, and, if the sources for the water of that well lay in the coal stratum, the company, having a right to remove the coal, if in the taking out of the coal destroyed the sources of those waters in the coal, then the company is not liable; but if the water was diverted from the well by reason of the fact that the defendant removed the support or weakened the support of ¡the premises in which were the sources of the water, then the company is liable, because it had no right to weaken and destroy the support of the premises of the plaintiff; and if the weakening or destroying of that support diverted the water from the well of that plaintiff, and thereby rendered the well useless, then the company would be liable for that item of damages, and you may consider the same in connection with the question of what damages the plaintiff is entitled to recover on his premises, keeping in mind the rule I have already given you, namely: What is the depreciation of the premises on account of the injuries you find he has sustained by reason of the acts of the defendant?”
The answer of the jury to the third interrogatory shows that in the instant case the loss of the well in question was due to a “break in the land caused by removal of pillars or support.” This brings the case squarely within the doctrine announced, and in line with the authorities cited. We think that the trial court correctly stated the rule as to loss of the well.
Upon an examination of the record in each of these cases we are satisfied that no prejudicial error intervened sufficient to warrant this court in revers *261 ing the judgment of the court below. Substantial justice appearing to have been done, both judgments of the Courts of Appeals are affirmed.

Judgments affirmed.

Wanamaker, Robinson, Jones, Matthias and Allen, JJ., concur.